HULL, Circuit Judge:
In this attorney negligence case, plaintiffs OFS Fitel LLC and OFS BrightWave LLC (collectively, “Fitel”) appeal the district court’s final judgment of dismissal, contending the district court abused its discretion in imposing discovery sanctions. Defendant Epstein, Becker & Green, P.C. (“EBG”) moved to dismiss the appeal for lack of jurisdiction. After review and oral argument, we conclude that jurisdiction exists over the appeal, and we affirm in part and reverse in part the district court’s sanctions order and dismissal of Fitel’s claims.
I. BACKGROUND

A. Fitel Purchases OFS and Considers No Double Dipping Policy

In November 2001, Fitel’s parent company Furukawa Electric Company, Ltd. (“Furukawa”) purchased Optical Fiber Solutions (“OFS”), a division of Lucent Technologies, Inc. that supplied fiber optic cable and materials to the telecommunications industry. Furukawa formed Fitel to own and operate OFS after the purchase, and, in connection with the purchase, hired EBG, a law firm, to provide legal advice regarding compliance with American labor and employment law.
Upon consummation of the purchase, many OFS management employees became Fitel’s employees. Fitel wished to provide these employees with a variety of benefits, including retirement and severance packages and paid vacation time, which would increase based on their years of service, including their time at Lucent. Some of these employees were already eligible for full retirement benefits from Lucent; these employees generally were older than those who were not yet full-retirement-eligible. Fitel’s management preferred not to permit these employees to “double dip” by taking full retirement benefits from Lucent while also having their years of Lucent service increase their benefits from Fitel.
Thus, Fitel adopted a policy giving non-retirement-eligible employees at Fitel full credit for their years of service at Lucent, while treating retirement-eligible employees as newly hired for purposes of calculating their benefits at Fitel. According to Fitel, EBG attorneys researched whether Fitel’s proposed “no double dipping” policy might violate the Age Discrimination in Employment Act (“ADEA”), 29 U.S.C. § 621 et seq., but never warned Fitel that the policy could subject Fitel to viable or potentially viable claims or lawsuits under the ADEA.

B. ADEA Claims Against Fitel

During the two years after its OFS purchase, Fitel engaged in a series of layoffs of OFS/Fitel employees. Beginning in *1348 July 2003, Fitel received demand letters from several laid-off former OFS/Fitel employees contending that Fitel’s less favorable treatment of older workers constituted actionable age discrimination under the ADEA. Fitel retained independent counsel, investigated the claims, and determined the claims had merit. Fitel settled the ADEA claims at a cost of $1.9 million in payments to the employees and approximately $450,000 in legal fees.

C. Fitel Sues EBG

In October 2005, Fitel sued EBG in state court, asserting claims for legal malpractice, breach of fiduciary duty, unjust enrichment, attorney’s fees, and punitive damages. The crux of each claim was that EBG, in failing to warn Fitel of the “no double dipping” policy’s potential non-compliance with the ADEA, had rendered deficient legal advice and failed to meet the standard of care imposed by the attorney-client relationship. EBG thereby committed malpractice, breached its fiduciary duty, and was unjustly enriched. EBG’s professional negligence was a core element of each claim. As Georgia law requires in professional negligence actions, Fitel attached to its complaint an expert’s affidavit identifying the defendant’s allegedly negligent acts and the factual bases for the charge of negligence. Fitel’s expert was Atlanta attorney Nancy Rafuse. Fitel’s complaint sought to recover not only the ADEA settlement money and the fees paid to EBG but also Fitel’s attorney’s fees incurred in bringing the instant action.
EBG removed the case to federal district court because diversity jurisdiction existed. The district court set the close of discovery for August 13, 2006.
EBG served upon Fitel a request for production of “all documents reflecting [Fi-tel’s] fee agreement or other agreements with the attorneys or law firms representing [Fitel] in this Action; all invoices [Fi-tel] received from such attorneys or law firms and all ... other documents reflecting payment made to such attorneys” (the “Document Request”). Fitel’s response objected on privilege, work product immunity, and relevance grounds but, subject to those objections, agreed to “produce documents responsive to [the Document Request] that reflect the amounts of attorneys fees billed to and paid by [Fitel] in connection with this action (redacted, if necessary, to protect privileged information).”
A dispute arose over what documents Fitel would produce and when production would occur. Fitel indicated that it would produce a summary of its counsel’s bills, while EBG insisted on the actual bills. Fitel reiterated to EBG its position that a summary was sufficient and stated that it would provide the summary as soon as EBG “confirm[ed] that if we provide the [summary], EBG will not contend that [Fi-tel’s] response is insufficient.” Because EBG never agreed that a summary was enough, Fitel never produced it. Fitel never produced the actual bills or a fee agreement either.
Another dispute arose over Rafuse’s written expert report due under Federal Rule of Civil Procedure 26. As stated above, Fitel identified Rafuse as its expert on the legal standard of care and attached her expert affidavit to its complaint. Fitel confirmed its designation of Rafuse as its expert witness in its post-removal initial disclosures. On May 18, 2006, Fitel noticed for late June the depositions of four EBG attorneys living in New York.[1] On June 12, 2006, Fitel wrote EBG in an attempt to schedule these depositions by agreement. Fitel’s letter informed EBG *1349 that Rafuse’s expert report would “take into account the deposition testimony” of those EBG attorneys and that “[w]e believe her report can be completed within thirty (30) days of the completion of these four depositions.” Throughout this case, Fitel consistently has contended it needed information from the EBG attorneys about what they did in representing Fitel in order for Rafuse to complete her report. As noted later, Rule 26(a)(2)(B) requires that an expert’s written report contain not only a statement of her opinions but also, among other things, the “data or other information considered by the witness in forming the opinions.”[2]
On June 14, 2006, EBG filed a motion and brief for extension of discovery from August 13, 2006 until December 13, 2006. EBG’s brief argued the discovery extension was needed for several reasons, including that Fitel’s expert report would not be prepared until EBG attorneys were deposed and then EBG needed time to depose that expert:
On June 12, 2006, counsel for Plaintiffs informed counsel for defendant that no expert report will be prepared by said expert until approximately thirty days after Plaintiff[s] depose[] certain attorneys employed by EBG (which depositions were originally noticed by Plaintiffs for the week of June 26, 2006 and which are currently the subject of discussion between counsel). Even if those depositions were taken on the dates originally noticed by Plaintiffs, said expert report would not be supplied before August of 2006, with the present discovery deadline being August 13, 2006. Once such an expert report is furnished to it, Defendant will want to depose said expert and evaluate the necessity of identifying an expert to testify in response thereto.
(Citation omitted). Thus, EBG acknowledged it was aware Fitel needed the EBG attorneys’ depositions before Fitel would be producing its expert’s written report. Shortly thereafter, the parties submitted a consent order, which the district court signed, extending the discovery period until October 31, 2006. The depositions of the EBG attorneys did not take place in June 2006 as originally noticed, and two of the four were delayed until September 2006 for the convenience of the attorneys. After EBG informed Fitel that one of the EBG attorneys’ depositions could not be scheduled until September 14, Fitel sent a letter to EBG reminding EBG that it needed the deposition to finalize Rafuse’s expert report:
[W]e remind you that we will need approximately thirty (30) days after the completion of the EBG lawyer depositions to finalize our expert report. If these gentlemen cannot find any earlier opening in their schedules, you should not expect our expert report until mid-October.
The last of the four EBG attorneys was deposed on September 27, 2006, and Fitel’s counsel obtained the transcript from the court reporter on October 16, 2006. Fitel produced Rafuse’s written report on November 3, 2006, which was eighteen days after receiving the last deposition tran *1350 script but three days after the close of discovery on October 31, 2006.

D. Discovery Motions, Hearing, and Sanctions Rulings

In late October 2006, EBG filed a series of discovery-related motions. Specifically, EBG moved the district court to, among other things: (1) exclude Fitel’s claim for attorney’s fees because of its failure to produce the bills from its current legal counsel; and (2) exclude the testimony of Rafuse and any other expert witness that Fitel might designate because of Fitel’s failure to timely produce the Rule 26(a)(2) written expert report. The district court heard argument on EBG’s motions on December 15, 2006.[3]
EBG first presented its motion to strike Fitel’s claim for attorney’s fees. Fitel argued that Georgia law did not require it to disclose its ongoing attorney’s bills on a regular basis. The court was not persuaded, stating “[i]f there was a personal injury case and your client was having ongoing medical bills would you say, well, I’m not going to give you any of the medical expenses because they’re ongoing? I mean, what’s the difference?” Fitel replied that providing its bills would require it to disclose “essentially, a blueprint of what the lawyers are doing and who they’re talking to and their work product.” The court responded that “you would have the right to redact from your bills that sort of information .... But to say we’re demanding attorney’s fees as part of our damages, and we refuse to give you the bills that document what those fees are ... I’m just mystified by that argument.”
Fitel then argued it had offered to produce a summary of its bills, but EBG rejected this offer and failed to bring this dispute to the court’s attention before the close of discovery. After hearing EBG’s rebuttal, the court dismissed with prejudice Fitel’s claim for attorney fees, finding a complete, willful failure by Fitel to provide its attorney’s fee documents:
[I]t appears, to me, that there’s been just a complete and willful failure to provide the defendants with discovery to which they’re entitled. And I’m going to grant the defendant’s motion to exclude the plaintiffs claim for attorney’s fees under the authority of Rule 37(d) and 37(b)(2)(C). It’s not — not appropriate to simply refuse to produce documents that are clearly relevant to a claim then say, well, you accept something less than that and I’ll give it to you and then, if you don’t accept it, to say, well, we’re going to make the judge order us to do it. And if the judge then orders us to do it, well, we’ll do it. That’s just not the way cases are handled in my court, and it’s not the way I’m going to permit cases to be handled in my court. So I grant the motion and dismiss, with prejudice, the plaintiffs claim for attorney’s fees.
The court next heard argument on EBG’s motion to exclude Fitel’s legal expert. Fitel argued that Rafuse’s expert affidavit, filed with the complaint, complied with Rule 26(a)(2) because the affidavit contained a summary of Rafuse’s opinions and the legal conclusions underpinning them, and thus enabled EBG to depose Rafuse during the discovery period. Fitel also pointed out that the delay in producing a formal expert report was caused by EBG’s failure to make its EBG attorney witnesses in New York available for depositions earlier in the discovery period. Without their testimony, Fitel claimed, Ra- *1351 fuse could not produce a report any more comprehensive than her affidavit.
Finally, Fitel offered, in lieu of sanctions, to make Rafuse available for deposition by EBG at its request. Specifically, Fitel’s counsel stated, “[BJecause it is a case dispositive issue, we would ask that the court permit the report to be filled [sic] out of [time] and permit the defendant to take a deposition if the defendant wants to do that.” In response, EBG’s counsel reiterated that Rafuse’s affidavit did not provide sufficient notice of her opinions to excuse non-production of the Rule 26(a)(2) written report, that Rule 26 and Local Rule 26.2(C) require the report to be produced early enough to permit expert depositions to be taken before the discovery period closes, and that “a failure to provide information [required by Rule 26(a)(2)] is, by itself, sufficient to warrant sanctions, including [exclusion] of the expert’s testimony.”
After hearing argument, the court granted EBG’s motion to exclude Fitel’s legal expert, reasoning:
Again there, was just a complete failure to comply with the rules and it’s not acceptable, to me, for a party to say, well, we didn’t comply with the rule because we thought it would be more efficient or better practice to do it our way, rather than the way the rule says you’re supposed to do it. It’s also not acceptable to me for a party to fail to provide discovery and then say, well, judge, if you decide we did wrong in not complying with the rules, well, we’ll do it now. That completely disrupts the orderly disposition of a case like this. For example, if I accepted Mr. Bramlett’s suggestion that, well, we’ll make the expert available to be deposed, that means discovery’s got to be reopened for that deposition. Then Mr. Wedge has got to hire his expert, and the plaintiff has got to depose his expert. And finally, I regret to say, and say after only very careful consideration that, frankly, this appears, to me, to be part of a pattern by the plaintiffs, of stonewalling and delaying discovery. And, for those reasons, I feel that it is my duty to enforce the local rule that says that, if you don’t comply, you don’t designate your experts sufficiently early in the discovery period, you don’t provide the report that allows the other side to take their deposition, the sanction is exclusion. And that’s why I’m granting the motion.
The court asked EBG’s counsel to proceed with his next motion. Fitel’s counsel then pointed out that the court’s exclusion of Fitel’s legal expert was case-dispositive and there was nothing left in the case, stating:
Your Honor, if I may, the court’s ruling on that motion is, in fact, case disposi-tive. Under the law if the plaintiff is unable to offer expert testimony on the issue of professional negligence, there is no case left. So if the court wants to proceed with these other motions, that is certainly the court’s prerogative. But my suggestion is, in light of the court’s ruling, we cannot proceed in this case. And so my thought is — and if you want to hear these other motions, that’s fine. But we’ve got to decide whether we— this case is going nowhere, based on that ruling; therefore, we’ll have to decide whether we need to appeal that or not or dismiss or whatever we’re going to do. Frankly, if the court wants to pursue these other motions, that’s fine. But there’s nothing left of this case in light of that last ruling, and the court could save everybody a lot of time and money by, simply, moving forward.
The court asked for comment by EBG’s counsel, who replied:
*1352 My only concern, your honor, is ... I think that the motion we haven’t heard yet [the fifth motion, regarding Fitel’s alleged “willful failure to engage in discovery”] is, perhaps, the most illustrative of the stonewalling and the failure to make discovery of anything that we’ve seen so far today. We got 16,000 electronic documents dumped on us starting four days before the discovery period ended .... Now in our motion for sanctions, one of our prayers for relief we made was dismissal of the complaint based on that conduct. And the only concern I have, at this juncture, is if the plaintiff' appeals the ruling of the court with respect to the expert affidavit ... the record would not have, in it, another potential ground for upholding that decision. And I guess the — I guess the net effect of all of that would be that, if the plaintiff were successful in an appeal on that ruling, I suppose we could address these remaining motions at that time. There are a lot of messy issues in these remaining motions .... So perhaps, the best course, at this time, would be for us to reserve our rights, with respect to our other outstanding motions, rather than subjecting the court and everybody else to [hearing that motion] .... I would, simply, want to be able to preserve our rights with respect to those motions, your honor.
The court asked Fitel’s counsel: “Do you want to respond in terms of the other motions for sanctions?” He replied:
Well ... in suggesting ... the case dispositive nature of the last ruling by the court, I offered the proposition that the case should terminate, at this point, based on efficiency. I have no problem with putting something in the order that preserves Mr. Wedge’s rights to reassert these motions if you, at any point, feel it’s necessary to do that .... [B]ut we’re talking about a case that is dead at this point, based on the last ruling, it seems to me. There are other things to do.
The court then stated:
Well, Mr. Bramlett, I can’t tell you how painful it has been for me to do what I did and how painful it was going to be for me and you to go through these next few motions. I appreciate your suggestion. I think it’s appropriate. And, based upon the stipulation by the plaintiff that the exclusion of its expert is a case dispositive event, this action is dismissed.
On January 5, 2007, the court entered an order of dismissal, which stated, among other things, that:
After the Court announced its rulings on the two [motions for sanctions], counsel for Plaintiffs ... suggested that, in lieu of proceeding with the remaining pending discovery motions, the Court simply proceed to dismiss the case. Defense counsel did not object and the Court found this suggestion appropriate. Accordingly, based on [Plaintiffs] stipulation that the Court’s ruling on [the expert motion] is “case dispositive,” the Court dismissed the case with prejudice.

E. Appeal and Motion to Dismiss

Fitel timely appealed the district court’s judgment of dismissal, arguing that the court abused its discretion in imposing the discovery sanctions. EBG then moved this Court to dismiss Fitel’s appeal for lack of jurisdiction. We carried EBG’s motion with the case and held oral argument.
II. JURISDICTION
We first consider our jurisdiction. See Taylor v. Appleton, 30 F.3d 1365, 1366 (11th Cir.1994) (“[A] court must first determine whether it has proper subject matter jurisdiction before addressing the *1353 substantive issues.”); Parklane Hosiery Co. v. Parklane/Atlanta Venture (In re Parklane/Atlanta Joint Venture), 927 F.2d 532, 534 (11th Cir.1991) (“Before reaching the principal issue raised in this appeal, this Court must first determine whether it has jurisdiction.”). Fitel submits this Court has jurisdiction over its appeal under 28 U.S.C. § 1291 and pursuant to United States v. Procter & Gamble Co., 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958). EBG contends we lack jurisdiction, citing Druhan v. American Mutual Life, 166 F.3d 1324 (11th Cir.1999) and Woodard v. STP Corp., 170 F.3d 1043 (11th Cir.1999). After review, we conclude appellate jurisdiction exists under 28 U.S.C. § 1291 and the Constitution. The parties are correct that Procter & Gamble, Dnuhan, and Woodard are relevant to our inquiry. Consequently, we discuss and then apply these precedents.

A. Precedents

1. United States v. Procter & Gamble Ca
In United States v. Procter & Gamble Co., the government filed a civil antitrust? lawsuit following a grand jury investigation in which no indictment was returned. 356 U.S. at 678, 78 S.Ct. at 984. Because the government was using the grand jury transcript to prepare for the civil trial, the defendants sought access to the transcript as well. Id. The government refused, but the district court ordered production. Id. at 679, 78 S.Ct. at 985. The government, “adamant in its refusal to obey,” moved the district court to either (1) stay its order pending the filing of an appeal and an application for an extraordinary writ, or (2) amend its order to state that if the government failed to produce the transcript, the district court would dismiss the complaint. Id. The district court granted the government its latter option and amended its order to provide for dismissal if the grand jury transcript was not produced. Id. The government refused to produce the transcript, and the district court dismissed the case. Id. at 679-80, 78 S.Ct. at 985.
The government appealed, and the Supreme Court confronted “the question of jurisdiction.” Id. at 680, 78 S.Ct. at 985. The Supreme Court first noted that the dismissal order was a final order that ended the case. Id. The Supreme Court then acknowledged “the familiar rule”— invoked by the defendants in arguing that jurisdiction was lacking — that a plaintiff who has voluntarily dismissed his complaint may not appeal. Id. However, the Supreme Court concluded that “[t]he rule has no application here,” because the government had “at all times opposed the production orders” and invited the dismissal sanction as a “way of getting review of the adverse ruling.” Id. In that regard, the Supreme Court held that when the government “proposed dismissal for failure to obey, it had lost on the merits and was only seeking an expeditious review.” Id. at 680-81, 78 S.Ct. at 985. In other words, “ ‘[t]he plaintiffs did not consent to a judgment against them, but only that, if there was to be such a judgment, it should be final in form instead of interlocutory, so that they might come to this court without further delay.’ ” Id. at 681, 78 S.Ct. at 986 (quoting Thomsen v. Cayser, 243 U.S. 66, 83, 37 S.Ct. 353, 358, 61 L.Ed. 597 (1917)). Thus, the Supreme Court had jurisdiction to decide the merits of the appeal.
2. Druhan v. American Mutual Life
After Procter & Gamble, this Court heard two cases where (1) the district court denied a plaintiffs motion to remand its case to state court; (2) the plaintiff then filed a written motion to dismiss; and (3) the district court granted the motion *1354 and dismissed the case with prejudice. In both remand cases, this Court concluded the plaintiff was not adverse to the final judgment, and thus jurisdiction did not exist.
Specifically, in Druhan v. American Mutual Life, this Court addressed the question of whether an appeal from a final judgment, which resulted from a voluntary dismissal with prejudice after the plaintiff lost a motion to remand to state court, is within this Court’s jurisdiction. 166 F.3d at 1325. The plaintiff Druhan sued the defendant insurance company in state court, alleging the defendant fraudulently induced her to purchase one of its policies. Id. at 1324. Because Druhan purchased the policy in connection with her employer’s benefit package, the defendant believed Druhan’s claims were preempted by the Employee Retirement Income Security Act (“ERISA”), 29 U.S.C. § 1001 et seq., and removed the case to federal court. Id. at 1324-25. Druhan moved the district court to remand the case to state court, arguing that ERISA did not preempt her claims. Id. at 1325. The district court agreed with the defendant and denied Druhan’s remand motion. Id.
Druhan then filed a written “Request and Stipulation for Entry of Final Judgment” (the “Judgment Request”). Id. at 1325 & n. 3. Because it was not signed by the defendant, this Court characterized the Judgment Request as “a motion to dismiss under Rule 41(a)(2) of the Federal Rules of Civil Procedure.” Id. at 1325 n. 3. In her Judgment Request, Druhan “stated that she had no claims under ERISA and thus the [district] court’s order denying her motion to remand effectively left her without a remedy.” Id. at 1325. Although the district court granted Druhan’s request by dismissing the action with prejudice,[4] the Druhan majority opinion does not state that the district court ever approved or agreed with Druhan’s assertion that she had no claim under ERISA. Indeed, Judge Barkett’s concurrence points out the district court’s remand order was not case-dispositive. See Druhan, 166 F.3d at 1327 (Barkett, J., concurring) (“The district court’s denial of Druhan’s motion to remand ... did not have the effect of dismissing her action. Druhan still had the ability to make her claim under ERISA.”); see also id. at 1326 (majority opinion) (stating that “plaintiff believes [the remand order] effectively disposed of her case,” but not stating that the district court ever agreed).
Druhan appealed, arguing that the district court erred in denying the remand motion because ERISA did not preempt Druhan’s state law claims. Because Dru-han affirmatively invited the final judgment entered against her, this Court confronted a jurisdictional issue — specifically, “whether an appeal from a final judgment that resulted from a voluntary dismissal with prejudice is within this court’s jurisdiction.” Id. at 1325.
Although the judgment was with prejudice and indisputably final, the Druhan Court determined that it lacked jurisdiction because there was no “case or controversy.” Id. at 1326.[5] The Druhan Court *1355 pointed out that Article III of the United States Constitution limits federal court jurisdiction to “Cases” and “Controversies,” and “[a]t the heart of the case or controversy requirement is the presence of adverse parties.” Id. The Court concluded that because the final judgment was entered in response to the plaintiffs motion for a dismissal with prejudice, and because neither party was contending the district court entered that judgment in error, “[tjhere is therefore no adverseness as to the final judgment, and thus no case or controversy.” Id. (emphasis added).
Additionally, the Druhan Court looked beyond the form of the appeal to the substance and concluded that it was “not an appeal from a final judgment, but an appeal from an interlocutory order denying the plaintiffs motion to remand.” Id. The Druhan Court determined that such an appeal from an interlocutory order is “not statutorily authorized” because the “district court’s order denying remand is not among the orders from which an appeal lies as a matter of right, and the plaintiff did not seek an appeal by certification” pursuant to 28 U.S.C. § 1292(b). Id. Although recognizing that there may be good policy reasons to allow the appeal to proceed, the Court concluded, “[t]hat, however, is a decision that rests in the hands of Congress, which, along with the Constitution, sets the boundaries of this court’s jurisdiction.” Id.
3. Woodard v. STP Cory.
Shortly after Druhan, this Court confronted a similar issue in Woodard v. STP Corp., 170 F.3d at 1043. Like Druhan, Woodard involved an appeal from an invited final judgment after the denial of the plaintiffs motion to remand a case to state court. Also like Druhan, Woodard did not involve an order that was case-dispositive.
Specifically, the Woodard plaintiff brought a class action in state court. Id. at 1044. After a grant of conditional class certification, the defendants removed the case to federal court based on diversity jurisdiction. Id. The plaintiff moved to remand the case to state court. Id. The district court denied the motion and vacated the state court’s conditional class certification. Id. The plaintiff then filed a motion for voluntary dismissal, which the defendants opposed. Id. The district court granted the plaintiffs motion and dismissed the case with prejudice. Id. The plaintiff appealed, challenging, among other things, the district court’s denial of remand. Id.
This Court noted that the plaintiff did not obtain § 1292(b) certification and thus could not appeal directly from the order denying remand. Id. Although the plaintiff obtained a final judgment when the court granted with prejudice his motion for voluntary dismissal, the Woodard Court concluded the judgment was not appeal-able because “it was obtained at the request of the plaintiff and there is therefore no ‘case or controversy’ in regard to it.” Id. (citing Druhan, 166 F.3d at 1326). This Court dismissed the appeal of the remand denial for lack of jurisdiction. Id. at 1044-45.

B. Jurisdictional Analysis

In light of these precedents, it is clear that for this Court to exercise jurisdiction over an appeal, our jurisdiction must be both (1) authorized by statute and (2) within constitutional limits. Druhan, 166 F.3d at 1326. As to the first prong, Congress authorized by statute appeals from final judgments. See 28 U.S.C. § 1291 (“The courts of appeals ... shall have jurisdiction of appeals from all final *1356 decisions of the district courts ... except where a direct review may be had in the Supreme Court.”).
Fitel’s appeal satisfies the requirement of being authorized by statute because it is an appeal of a final judgment of dismissal with prejudice. See District Court Order of Jan. 5, 2007 (the “Dismissal Order”), at 4 (“this action is hereby dismissed with prejudice”). If Fitel loses this appeal, the case is over. Fitel cannot re-file because the district court’s dismissal was with prejudice.[6] See McMahon v. Presidential Airways, Inc., 502 F.3d 1331, 1338 (11th Cir.2007) (stating that an order is final and appealable when it “ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment”).[7] Because Fitel appeals a final judgment, jurisdiction exists under § 1291 regardless of whether the substance of Fitel’s appeal concerns an interlocutory order. See Myers v. Sullivan, 916 F.2d 659, 673 (11th Cir.1990) (“Under general legal principles, earlier interlocutory orders merge into the final judgment, and a party may appeal the latter to assert error in the earlier interlocutory order.”); Barfield v. Brierton, 883 F.2d 923, 931 (11th Cir.1989) (holding that “review of the final judgment opens for consideration the prior interlocutory orders”). Thus, Fitel’s appeal of the district court’s final dismissal with prejudice is expressly authorized by § 1291.
The only question is whether there is sufficient adverseness as to that final dismissal to satisfy the case or controversy requirement of the Constitution. Where a party appeals through § 1291 (the final-judgment appeal statute), she must be adverse “as to the final judgment.” See Druhan, 166 F.3d at 1326. EBG argues that the adverseness question is controlled by this Court’s precedent in Druhan and Woodard and that Fitel is thus not adverse to the district court’s final judgment. We disagree.
This Court addressed the adverseness question in Druhan and Woodard only in the context of the appeal of a denial of a motion to remand, not an interlocutory ruling that was effectively case-dispositive. In both Druhan and Woodard, this Court found that sufficient adverseness is not present when a plaintiff loses a contested interlocutory ruling on a motion to remand and then voluntarily files a written request that a final judgment be entered with prejudice. In such cases, the contested remand denial affects only the forum in which the plaintiff must litigate, and the dismissal on the merits derives only from the plaintiffs own written request. Thus, when a plaintiff after denial of a motion to remand requests a dismissal with prejudice, there is no contested court ruling, either interlocutory or final, as to the merits of the plaintiffs claims.
Consequently, in the factual circumstances of Druhan and Woodard, the *1357 plaintiff is adverse to the remand order but not adverse as to the final judgment on the merits, and thus no case or controversy exists. See Woodard, 170 F.3d at 1044 (stating that there was no case or controversy as to the final judgment because the plaintiff requested it after remand was denied, and implying that both the district court and the defendants anticipated that the plaintiff and/or his counsel intended to re-file the claims elsewhere); Druhan, 166 F.3d at 1326 (stating that “the required adverseness is lacking” as to the final judgment that “the plaintiff specifically requested”); see also Druhan, 166 F.3d at 1327 (Barkett, J., concurring) (“Druhan still had the ability to make her claim under ERISA.”).
But Druhan and Woodard are not directly on point here because the present case contains distinct factual ingredients that are critical to the adverseness issue. First, the contested interlocutory orders at issue are materially different. Unlike the remand orders at issue in Druhan and Woodard that concerned only the forum where the cases would be heard, the sanctions order here excluding plaintiffs legal expert was case-dispositive because it foreclosed Fitel from presenting the expert testimony required to prove professional negligence, which was a core element in all of its claims. See Howard v. Walker, 242 Ga. 406, 249 S.E.2d 45, 46 (1978) (holding that in legal malpractice actions, “for the plaintiff to recover he must produce opinion testimony of an expert witness”); Schluter v. Perrie, Buker, Stagg & Jones, P.C., 230 Ga.App. 776, 498 S.E.2d 543, 545 (1998) (“The law presumes that lawyers perform legal services in an ordinarily skillful manner. This presumption remains with the attorney until the presumption is rebutted by expert legal testimony; otherwise the grant of a summary judgment in favor of the attorney is proper.” (quotation marks and footnotes omitted)).[8]
Second, this case involves an attorney who candidly informed the district court of the impact of its sanctions ruling on the plaintiffs case. Fitel’s counsel advised the district court that its interlocutory sanctions ruling was case-dispositive and that the court should terminate the case at that point for efficiency purposes rather than proceed with the other pending motions. The dissent treats Fitel’s counsel’s suggestion as only a voluntary consent to a judgment against Fitel. However, the more accurate and fairer reading of Fitel’s counsel’s statements, both literally and in context of the record as a whole, is not that Fitel was consenting to an adverse judg *1358 ment against it but only stating that, since the court had excluded its required expert, the court should expedite the case and put the ruling in final form because that ruling was undisputedly case-dispositive.
Third, and importantly, the district court here agreed with Fitel’s counsel’s suggestion that the sanctions ruling was case-dispositive. The district court stated that the nature of the sanctions ruling made the case “dead at this point.” In regard to Fitel’s counsel’s statement that the case should terminate for efficiency, the district court responded, “I appreciate your suggestion. I think it’s appropriate.”[9] And because Fitel was willing to stipulate to the fact that the court’s expert sanctions ruling was case-dispositive, this allowed the court to act immediately rather than proceeding with other motions. The court itself then stated, “And, based upon the stipulation by the plaintiff that the exclusion of its expert is a case dispositive event, this action is dismissed.” The basis of the district court’s dismissal was thus the undisputed case-dispositive nature of its contested interlocutory sanctions order. And by basing its dismissal on that case-dispositive event, the district court effectively made that contested interlocutory expert exclusion order a final order.
Because of these important factual distinctions, this Court’s precedent in Druhan and Woodard is not directly on point here as to the adverseness question. Instead, this case is factually closer to, and thus controlled by, the Supreme Court’s decision in Procter & Gamble. As in Procter & Gamble, Fitel had lost on the merits of the contested exclusion of its expert and the district court’s final order merely allowed Fitel to seek an expeditious review of that ruling. See Procter & Gamble, 356 U.S. at 680-81, 78 S.Ct. at 985 (acknowledging rule that a plaintiff who seeks voluntary dismissal may not appeal but concluding that rule is inapplicable when the plaintiff opposed an interlocutory production order and invited dismissal after “it had lost on the merits” and only as a way of “seeking an expeditious review”). Because the interlocutory sanctions order was case-dispositive and Fitel opposed that interlocutory order on the merits, Fitel stands adverse to the resulting final judgment that was expressly based on the undisputed ease-dispositive nature of the contested interlocutory ruling. Accordingly, because Fitel’s appeal satisfies both the statutory requirement of a final judgment and the Constitutional requirement of parties that are adverse to the final judgment, we have jurisdiction to hear Fitel’s appeal.
Lastly, we pause to address the dissent’s concerns. Our dissenting colleague suggests Fitel should have simply asked the district court to certify the appealability of the expert exclusion order under 28 U.S.C. § 1292(b). Such reasoning has fatal flaws.
First, the district court entered a final judgment, making the § 1291 route directly applicable. There is no requirement that a party travel the § 1292 route before filing a § 1291 appeal from a final judgment. Rather, the only question here is whether the requisite adverseness as to that final judgment exists to satisfy the Constitution, and it does.
Second, § 1292(b) certification is wholly discretionary with both the district court and this Court.[10] Furthermore, *1359 § 1292(b) sets a high threshold for certification to prevent piecemeal appeals. Indeed, to obtain § 1292(b) certification, the litigant must show not only that an immediate appeal will advance the termination of the litigation but also that the appeal involves “a controlling question of law as to which there is substantial ground for difference of opinion.” 28 U.S.C. § 1292(b). Most interlocutory orders do not meet this test.[11] Although the district court’s order excluding Fitel’s expert was case-dispositive, it was nonetheless a discovery sanctions order where the chances of § 1292(b) review are slim.[12]
Third, the dissent advocates looking beyond the form of the final dismissal with prejudice to the substance of the underlying issue raised on appeal. However, as discussed above, our precedent establishes that when the appeal is from a final judgment, the fact that the appeal substantively concerns an interlocutory ruling is no bar to jurisdiction. See, e.g., Myers, 916 F.2d at 673 (stating that “earlier interlocutory orders merge into the final judgment, and a party may appeal the latter to assert error in the earlier interlocutory order”).
Fourth, and more troubling, the dissent’s approach foists upon litigants and counsel an untenable position that is not required by § 1291 nor § 1292 nor the Constitution. Under the dissent’s approach, an attorney dare not candidly tell the court that its ruling is case-dispositive and that it, for efficiency reasons, should consider terminating a case with prejudice due to the case-dispositive nature of the interlocutory order because any subsequent attempt to appeal would be insufficiently adverse and there would be no jurisdiction. The dissent suggests the attorney instead should move for a § 1292(b) certification and, if that fails, proceed to a Rule 12(b)(6) or summary judgment determination. Thus, under the dissent’s approach, an attorney in Fitel’s counsel’s position faces an ethical dilemma. He can either (1) fulfill his duty of candor and ethical responsibility to the court by forthrightly informing the court that its ruling was case-dispositive and a final dismissal with prejudice is thus appropriate for efficiency purposes, thereby surrendering Fi-tel’s right to appeal the court’s order, or (2) continue to litigate to finality a case he knows has no legitimate basis for proceeding without an expert witness, just so Fitel ultimately can challenge the court’s case-dispositive interlocutory order excluding the expert.
On the other hand, if we recognize that adverseness as to the final judgment (i.e., the dismissal with prejudice here) is preserved when the contested interlocutory order is case-dispositive and the district court bases its dismissal with prejudice on the fact that its interlocutory decision disposed of the entire case, and the plaintiff consistently has opposed the order underlying the final dismissal, we prevent such a dilemma and also harmonize Druhan and *1360 Woodard with Procter & Gamble.[13] Furthermore, this approach is consistent with the fundamental appellate jurisdiction principles of judicial efficiency and avoiding piecemeal appeals highlighted by the dissent. It avoids the waste of a party going through a dismissal or summary judgment procedure that it already knows it will lose simply to get a final judgment. And because this approach rests on the facts that the district court’s interlocutory ruling was case-dispositive and the final judgment was with prejudice, an appeal of such an interlocutory order is no more piecemeal than an appeal of a dismissal or summary judgment order as the case either will end on appeal if the district court is affirmed or be remanded for further proceedings if the district court is reversed. If anything, this approach is less piecemeal than the dissent’s approach, which encourages increased reliance on the interlocutory appeal statute.
For all these reasons, we conclude jurisdiction over this appeal exists under § 1291 and the Constitution. Now we turn to the merits of Fitel’s appeal.
III. SANCTIONS RULINGS
Fitel’s appeal challenges these rulings on EBG’s discovery motions: (1) the district court’s exclusion of Fitel’s expert as a sanction for its untimely production of Rafuse’s written expert report; and (2) the court’s striking of Fitel’s claim for attorney’s fees as a sanction for its refusal to produce copies of its attorney’s fee agreement and attorneys’ bills. Our review of a district court’s decision to impose sanctions under Rule 37 is “sharply limited to a search for an abuse of discretion and a determination that the findings of the trial court are fully supported by the record.” Serra Chevrolet, Inc. v. Gen. Motors Corp., 446 F.3d 1137, 1146-47 (11th Cir.2006) (quotation marks and citations omitted); BankAtlantic v. Blythe Eastman Paine Webber, Inc., 12 F.3d 1045, 1048 (11th Cir.1994); Pesaplastic, C.A. v. Cincinnati Milacron Co., 799 F.2d 1510, 1519 (11th Cir.1986). We discuss each in turn.

A. Exclusion of Expert Testimony

The district court excluded Fitel’s legal expert because it found (1) Fitel violated Federal Rule of Civil Procedure 26(a)(2) and Local Rule 26.2(C) by failing to provide its expert witness report until three days after the expiration of the discovery period, and (2) Fitel had engaged in “willful” delay in producing the report, which the court described as “stonewalling.” Fi-tel argues the district court abused its discretion in excluding its expert because Fitel timely produced its expert’s affidavit, the affidavit complied fundamentally with the discovery rules, the rules do not require its expert’s report to be produced before the close of discovery, and, in any event, the record establishes that any delay as to the report was substantially justified.
We start with Rule 26(a)(2), which requires a party to disclose to the other parties the identity of any expert witness *1361 it may use at trial to present evidence and “[ejxcept as otherwise stipulated or directed by the court, this disclosure shall ... be accompanied by a written report prepared and signed by the witness.” Fed.R.Civ.P. 26(a)(2). Thus, “ ‘[disclosure of expert testimony’ within the meaning of [Rule 26] contemplates not only the identification of the expert, but also the provision of [the expert’s] written report.” Reese v. Herbert, 527 F.3d 1253, 1265 (11th Cir.2008); see Prieto v. Malgor, 361 F.3d 1313, 1317—18 (11th Cir.2004). The expert’s written report must contain:
a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.
Fed.R.Civ.P. 26(a)(2)(B). Here, it is undisputed that Fitel’s complaint identified its expert and on November 3, 2006 Fitel produced a written report that contained all of the information required by Rule 26(a)(2)(B).
Rather, the dispute here concerns only the timing of the disclosure of the expert’s report. Rule 26(a)(2)(C) provides that, absent a stipulation or court order, the expert report must be disclosed “at least 90 days before the trial date or the date the case is to be ready for trial.” In this case, however, no date had been set for the trial or for the case to be ready for trial.[14] Nonetheless, the heart of EBG’s argument is that Local Rule 26.2(C), when read with Federal Rule 26(b)(4)(A), requires disclosure of Fitel’s expert report before the close of discovery so that the expert can be deposed within the discovery period.
In Reese, this Court recently examined the same Local Rule and the timing of the disclosure of an expert’s report when a trial date had not yet been set.[15] The Reese Court first stated that “Rule 26 does not prescribe a specific deadline applicable” for disclosure of the expert’s written report “because a trial date had not been set.” Id. at 1265. The Court in Reese then read Local Rule 26.2(C)’s requirements, along with Rule 26(b)(4)(A)’s deposition prerequisite, and determined that both the expert’s name and report should be disclosed before the close of discovery. Id. Here is how Reese reached that conclusion.
The Reese Court first stressed that Rule 26’s “expert disclosure rule is intended to provide opposing parties reasonable opportunity to prepare for effective cross exami *1362 nation and perhaps arrange for expert testimony from other witnesses.” Reese, 527 F.3d at 1265 (quotation marks omitted). The Reese Court then noted that “in accordance with this purpose,” Local Rule 26.2(C) requires that a party “shall designate” its expert “sufficiently early in the discovery period”: (1) “to permit the opposing party the opportunity to depose the expert”; and (2) “if desired, to name its own expert” so that the second expert could also be deposed “prior to the close of discovery.” Id. (quoting Local Rule 26.2(C)).[16] While Local Rule 26.2(C) does not reference the expert’s written report, it does require the expert be deposed “pri- or to the dose of discovery.” The Reese Court pointed out that Rule 26(b)(4)(A) does not permit an expert to be deposed until after her report is provided to the opposing party. Id. The syllogism in Reese appears to be: (1) the expert must be deposed before the close of discovery (Local Rule 26.2(C)), (2) the report must come before the expert’s deposition (Rule 26(b)(4)(A)), and (3) therefore the expert’s report necessarily must come before the close of discovery. In Reese, this Court concluded that plaintiffs filing of his expert affidavit seven weeks after the close of discovery and in response to defendants’ summary judgment motion violated Rule 26 and Local Rule 26.2(C) because disclosure of the expert’s report was not before the close of discovery, much less sufficiently in advance of the close of discovery to furnish defendants an opportunity to depose that expert and obtain a rebuttal expert during the discovery period. Id.
Here, Fitel did not produce Ra-fuse’s written report until after the close of discovery. Thus, Fitel’s disclosure of Ra-fuse’s written report after the close of discovery ran afoul of Rule 26 and Local Rule 26.2(C), as interpreted in Reese.[17]
Fitel argues its inclusion of Rafuse’s expert affidavit in its complaint was enough to comply with Rule 26 and Local Rule 26.2(C). We disagree. Rule 26 mandates that an expert’s written report contain specific information — such as the expert’s compensation for study and testimony, a list of all publications the expert authored in the preceding ten years, and a list of all cases in which the expert testified at trial or by deposition in the preceding four years. Fed.R.Civ.P. 26(a)(2)(B). All of this information is wholly absent from Ra-fuse’s affidavit. This type of information is required in the expert’s written report precisely because it is important information necessary to attorneys in preparation for deposing the expert. Moreover, the affidavit does little more than assume the complaint’s facts are true and, on that basis, opines generally that EBG departed from the professional standard of care by not advising Fitel that its suggested ap- *1363 proaeh to the “double dip” issue might violate the ADEA. The affidavit provides no meaningful analysis of how and why EBG’s actions breached the standard of care. The written report Fitel ultimately produced, on the other hand, provides the level of detailed analysis that the expert disclosure rule requires. It simply came too late.
Alternatively, Fitel argues it could not produce a meaningful legal expert report without first taking the depositions of the EBG attorneys who had represented Fitel regarding its “no double dipping” policy and then reviewing those transcripts. Fi-tel contends it was justified in not producing the report until after those EBG depositions and it repeatedly advised EBG that EBG’s rescheduling the depositions would delay Fitel’s report. As discussed later, this argument, along with other undisputed facts in this record, provide substantial justification for Fitel’s conduct but they do not negate the fact that the timing requirement in the rules was violated.[18] As this Court noted in Reese, “compliance with the requirements of Rule 26 is not merely aspirational.” Reese, 527 F.3d at 1266.
Nevertheless, determining that Fitel violated Rule 26 and Local Rule 26.2(C), as interpreted in Reese, comprises only half the inquiry. We still must consider whether the sanction imposed by the district court was within its discretion. Here, the district court excluded Rafuse’s expert testimony. Under Rule 37(c)(1), a district court clearly has authority to exclude an expert’s testimony where a party has failed to comply with Rule 26(a) unless the failure is substantially justified or is harmless. See Rule 37(c)(1); Local Rule 26.2(C).[19] The district court’s sanction was based on its finding that Fitel had engaged in “willful” delay in producing Rafuse’s written expert report, which the court characterized as “stonewalling.” While the district court did not use the term “substantially justified,” the court’s finding that Fitel’s delay was willful and “stonewalling” is effectively a finding of no such substantial justification. Fitel argues the undisputed facts in the record do not support the willfulness/stonewalling finding, but establish only substantial justification. We agree and explain why.
First, this is not a case of complete failure to provide information about an expert witness. Fitel identified Rafuse as its expert when it filed its complaint, confirmed that designation in its post-removal initial disclosures, and filed an affidavit of Rafuse with at least some information about her opinions.
Second, Fitel repeatedly told EBG it needed the EBG attorney depositions before Rafuse could do her report. As early as June 2006, well before the end of the discovery period, Fitel’s counsel informed EBG that Rafuse’s report needed to “take into account the deposition testimony” of the EBG attorneys whose depositions the *1364 parties were scheduling and that Fitel “believe[d] her report can be completed within thirty ... days of the completion of these four depositions.” See June 12, 2006 letter from Fitel’s counsel to EBG’s counsel. Moreover, Fitel, also in May 2006, noticed the depositions of the EBG attorneys for late June, affording EBG over four weeks of advance notice. If these EBG depositions had occurred as scheduled in late June, Fitel’s Rafuse report would have been timely produced in mid- to late-July. We know that because once Fitel had those four EBG depositions, it produced Rafuse’s report in eighteen days.
Rather than those EBG depositions taking place in June, Fitel’s counsel cooperated with EBG’s counsel to schedule those depositions at the attorneys’ convenience, and those depositions were not completed until September 27, 2006. Indeed, Fitel reiterated its position after scheduling difficulties arose with regard to the EBG attorney depositions, expressly reminding EBG’s counsel in a July 11, 2006 letter that “we will need approximately thirty ... days after the completion of the EBG lawyer depositions to finalize our expert report” and that if those depositions could not be scheduled until mid-September, “you should not expect our expert report until mid-October.”[20] Once Fitel obtained the transcript of the final EBG attorney deposition, it promptly produced the expert report, which the parties agree complies with Rule 26(a)(2)(B).
Third, it is noteworthy that in June 2006, EBG itself moved for an extension of discovery from August 13, 2006 until December 13, 2006 and even noted that it was needed in part because Fitel “informed [EBG] that no expert report will be prepared ... until approximately thirty days after [Fitel] deposes certain attorneys employed by EBG,” and that “[o]nce such an expert report is furnished to it, [EBG] will want [time] to depose said expert and evaluate the necessity of identifying an expert to testify in response thereto.” EBG well knew Fitel’s report would come only after the EBG depositions. There was no element of surprise to EBG about when the expert report was going to be provided.
Fourth and most importantly, no trial date for the case had been set or was imminent. Fitel produced Rafuse’s expert report on November 3, 2006, and EBG had ample time to take Rafuse’s deposition in November 2006 and designate its rebuttal expert.[21] There is no claim here that the passage of time affected EBG’s ability to employ a rebuttal legal expert or the ability of its expert to conduct needed analysis.
Fifth, this is not a case where the plaintiff knew all the facts anyway; rather, Fitel reasonably needed the depositions of the defendant EBG’s attorneys before it produced its legal expert’s report. Here, the issue involves not so much Fitel’s interaction with EBG, which Fitel would have known at the outset of the case, but what actions, investigation, and research occurred within the confines of the law firm before EBG gave its advice, or allegedly failed to give any ADEA advice that *1365 forms the crux of the case. Certainly, Fitel knew what advice the EBG attorneys gave to it and what the no double dipping policy said, but the attorneys’ depositions were required to show what the EBG attorneys did, and knew, before rendering that advice or failing to render it, as Fitel alleges.[22]
In sum, the undisputed facts in the record reveal that Fitel failed to produce its legal expert’s report not through willful delay or stonewalling, but from: (1) a good-faith attempt to accommodate the EBG attorneys in scheduling their depositions over several months (with the last one occurring on September 27, 2006, shortly before the end of discovery), rather than Fitel’s insisting on taking all the EBG attorneys’ depositions on the noticed, fixed dates in June 2006; and (2) a good-faith belief that the more “practical! ]” and productive way to structure discovery in this legal negligence case was to identify its legal expert, engage in all relevant fact discovery of the EBG attorneys, and then to produce the expert’s written report and to engage in expert discovery. Further, this approach was reasonable given the nature of the case and the actual need for those attorney depositions in order to have a meaningful legal expert report.
Simply put, given all these particular factual circumstances in this case, we cannot say the record supports the district court’s finding that Fitel engaged in willful or “stonewalling” delay as to the written report of its expert. Instead, we conclude that the undisputed facts show Fitel had substantial justification for its conduct as to its expert report, that the record does not support the district court’s willful-delay determination as to that report, and thus the district court abused its discretion in excluding Rafuse’s expert testimony. Therefore, we reverse the district court’s exclusion of Fitel’s expert and subsequent dismissal of Fitel’s entire complaint with prejudice and remand for further proceedings.

B. Dismissal of Attorney’s Fees Claim

Fitel also challenges the district court’s decision to dismiss Fitel’s attorney’s fees claim as a sanction for Fitel’s failing to produce its attorney’s fee agreement and attorneys’ bills incurred in the instant case. The district court found that there was a complete and willful failure by Fitel to provide EBG with the required documents given that Fitel expressly sought to recover its attorney’s fees incurred in this case.
The district court imposed the sanction .pursuant to Rule 37(d) and 37(b)(2)(C). Rule 37(d) states that if a party
fails ... to serve a written response to a request for inspection submitted under Rule 34, after proper service of the request, the court in which the action is pending on motion may make such orders in regard to the failure as are just, *1366 and among others it may take any action authorized under subparagraphs (A), (B), and (C) of subdivision (b)(2) of this rule.
Fed.R.Civ.P. 37(d). In turn, Rule 37(b)(2)(C) lists dismissal as a permitted sanction, stating that the court may issue “[a]n order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof or rendering a judgment by default .... ” Fed.R.Civ.P. 37(b)(2)(C) (emphasis added). Thus, these rules permit dismissal as a sanction for failure to produce documents.
Construing these same rules, this Court concluded, “where appropriate, a court is authorized to strike pleadings, stay proceedings, dismiss the action or any part thereof, or render a judgment by default against a disobedient party.” United States v. Certain Real Prop. Located at Route 1, Bryant, Ala., 126 F.3d 1314, 1317 (11th Cir.1997).[23] However, we also indicated that a district court may impose the severe sanction of dismissal of a claim with prejudice only where the party’s noncompliance is willful or in bad faith. Id. at 1317-18.[24]
As to Fitel’s attorney agreement and attorney’s bills, there is record evidence to support the district court’s finding of a complete and willful failure to comply with EBG’s discovery requests. The documents responsive to EBG’s Document Request were directly relevant to Fitel’s claim for attorney fees. In its answer to the Document Request, Fitel first agreed to produce the responsive documents (redacted to protect privilege), as follows:
[Fitel] objects to Request Number 32 to the extent that it improperly seeks privileged communications between [Fitel] and its counsel. [Fitel] further objects to Request Number 32 to the extent that it seeks information that is not relevant to any claim or defense asserted in the action. Subject to and without waiving the foregoing objection and the General Objections above, [Fitel] will produce documents responsive to Request Number 32 that reflect the amounts of attorneys fees billed to and paid by [Fitel] in *1367 this action (redacted, if necessary, to protect privileged information).
Nevertheless, despite repeated entreaties, Fitel produced nothing at all. Instead, Fitel (1) decided unilaterally that a summary of its counsel’s bills — rather than the documents EBG requested and Fitel stated it would provide with redactions — would be sufficient, and then (2) told EBG that even the summary would not be produced until EBG agreed not to challenge the sufficiency of Fitel’s production. At the time of the motions hearing and court’s sanctions ruling, Fitel still had produced nothing at all, not even the summary or the underlying agreement. The district court also found that Fitel’s conduct evinced a strategy by Fitel and/or its counsel of “we’re going to make the judge order us to” produce the attorney’s fees documents.[25]
In sum, Fitel’s conduct as to its attorney’s fee agreement and the attorney bills is starkly different from its cooperative conduct as to Rafuse’s written expert report. Further, while we may have chosen a different sanction (such as awarding EBG its costs in filing its motion to compel), the district court’s choice of sanction — dismissal of the attorney’s fee claim — was within its range of options under Rule 37(d) and 37(b)(2)(C) given its finding of a complete and willful failure to comply with EBG’s Discovery Request. Thus, we cannot say the district court abused its discretion in its dismissal of Fitel’s attorney’s fees claim pursuant to Rule 37(d) and 37(b)(2)(C).
IV. CONCLUSION
For the reasons set forth above, we reverse the district court’s exclusion of Fitel’s expert witness and dismissal of Fi-tel’s entire complaint but affirm its dismissal of Fitel’s claim for attorney’s fees. We remand the case to the district court for further proceedings consistent with this opinion.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

. All four were EBG attorneys when EBG represented Fitel, but one later left EBG.

. In this opinion we quote the rules as they read when the district court issued its rulings in 2006. Effective December 1, 2007, however, the Federal Rules of Civil Procedure were amended "to effect a 'general restyling ... to make them more easily understood and to make style and terminology consistent.'" Mills v. Foremost Ins. Co., 511 F.3d 1300, 1308 n. 11 (11th Cir.2008) (quoting Fed.R.Civ.P. 1, Advisory Comm, note on 2007 Amendment). "Except for a very small number of minor technical amendments,” none of which is relevant here, “the amendments were intended to make no changes in substantive meaning.” Id. (quotation marks and citation omitted).

. At the hearing, Fitel was represented by Jeffrey O. Bramlett of Bondurant, Mixson & Elmore LLP, and EBG was represented by Robert B. Wedge of Shapiro, Fussell, Wedge & Martin, LLP.

. Druhan's Judgment Request apparently did not specify whether she sought a dismissal with or without prejudice; this Court presumed the dismissal with prejudice conformed to Druhan’s wishes because she never argued otherwise on appeal. See id. at 1325 n. 3.

. The Druhan Court concluded that Procter & Gamble did not control; that case, the Druhan Court found, was "very different” because it did not involve "an affirmative request by the plaintiff that the case be dismissed with prejudice” but merely an attempt by the plaintiff "to influence the court's discretion in determining the appro *1355 priate sanction for discovery violations.” Id. at 1325 n. 4.

. In contrast, "[w]e have held that we do not have jurisdiction to hear appeals from voluntary dismissals without prejudice, because they leave the plaintiff free to bring the case again and therefore are not 'final' decisions for purposes of appellate jurisdiction under 28 U.S.C. § 1291.” Druhan, 166 F.3d at 1325 n. 4. The Druhan Court pointed out, though, that the line of cases concerning dismissals without prejudice is “distinguishable from the case at hand [because] the appellant in this case is not free to bring the case again, and thus the judgment entered by the district court was truly ‘final.’ ” Id.

. See also Carpenter v. Mohawk Indus., Inc., 541 F.3d 1048, 1052 (11th Cir.2008) (stating that a final decision for the purpose of obtaining appellate jurisdiction under § 1291 "is one that 'ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment’ " (quoting McMahon, 502 F.3d at 1338)).

. In the district court, EBG's counsel did not disagree with or object to Fitel's counsel's characterization of the district court's sanctions ruling as case-dispositive. On appeal, EBG now argues the district court's exclusion of Fitel's expert was not, in fact, case-disposi-tive because the expert’s testimony addressed only Fitel's attorney malpractice claim and not its claims for breach of fiduciary duty, unjust enrichment, attorney’s fees, or punitive damages. That argument lacks merit. As Fitel’s complaint makes clear, the crux of its unjust enrichment and breach of fiduciary duty claims is EBG's failure to meet the standard of care imposed by the attorney-client relationship. Both the breach of fiduciary duty and unjust enrichment counts incorporate the allegations of legal malpractice without adding any independent factual allegations, and the latter count expressly alleges that EBG was unjustly enriched by receiving compensation for "defective, unskillful, and harmful legal advice.” And under Georgia law, neither an O.C.G.A. § 13-6-11 attorney’s fee claim nor an O.C.G.A. § 51-12-5.1 punitive damages claim can survive without an award of relief on an underlying claim. Morris v. Pugmire Lincoln Mercury, Inc., 283 Ga.App. 238, 641 S.E.2d 222, 225 (2007). Thus, Fitel's claims, as pled, all required proof of attorney malpractice, and the interlocutory ruling, as all agreed in the district court, was case-dispositive.

. Also, during argument on the expert report sanctions motion and before the district court issued its ruling, the court said to Fitel's counsel, “That’s why I find it so hard to believe ... that you just did nothing, subjecting yourself to, potentially, having the whole case go away because you simply failed to file the report the rule says you've got to file.”

. See Jenkins v. BellSouth Corp., 491 F.3d 1288, 1291 (11th Cir.2007) ("Under section *1359 1292(b), both the district court and the court of appeals exercise discretion about granting interlocutory review ....”).

. In addition, to accept the dissent would mean interlocutory orders that are case-dis-positive but rest on the application of settled law are unreviewable.

. The dissent attempts to avoid Procter & Gamble by noting § 1292(b) was not enacted at the time of that Supreme Court decision. However, in Procter & Gamble and this case, there was in fact a final judgment entered that ended the case, making § 1292(b) inapplicable in any event. The jurisdictional question in Procter & Gamble, which is directly relevant here, was whether the plaintiffs inviting that final judgment, after losing the discovery issue on the merits, precluded jurisdiction over that final judgment.

. The dissent also states that Congress, in enacting § 1292(b), "required that the district judge determine the dispositive effect of the order it has entered. This makes perfect sense.” However, its discussion conflates § 1292(b)'s standard for certification (requiring, among other things, that an immediate appeal from an interlocutory order "materially advance the ultimate termination of the litigation”) with the quite different question of whether the interlocutory order already entered was case-dispositive and left nothing of the litigation except judgment and appeal. The dissent fails to recognize the effect of a district court's contested interlocutory order already being case-dispositive on the plaintiff's adverseness to the final judgment.

. EBG filed its expert exclusion motion on October 23, 2006, discovery was set to close on October 31, 2006, and Fitel produced its expert report on November 3, 2006. By Local Rule and the court’s scheduling order the parties had twenty days to file a motion for summary judgment after the close of discovery. See N.D. Ga. Civ. Loe. R. 56.1(D). The parties then had thirty days after the court rules on the summary judgment motion(s) to file a consolidated pretrial order. The case is "presumed ready for trial” on the first trial calendar after the consolidated pretrial order has been filed. See Local Rules 16.4(A), 40.1. There was no pretrial order in this case, no date set for the case to be ready for trial, and no trial date set.

. As we do here, Reese quoted and interpreted the Federal Rules of Civil Procedure as they were phrased in 2006, before the general restyling that became effective December 1, 2007. Reese, 527 F.3d at 1264-65 & n. 18; see supra n. 2.

. Northern District of Georgia Civil Local Rule 26.2(C) states:
Any party who desires to use the testimony of an expert witness shall designate the expert sufficiently early in the discovery period to permit the opposing party the opportunity to depose the expert and, if desired, to name its own expert witness sufficiently in advance of the close of discovery so that a similar discovery deposition of the second expert might also be conducted prior to the close of discovery.
Any party who does not comply with the provision of the foregoing paragraph shall not be permitted to offer the testimony of the party's expert, unless expressly authorized by court order based upon a showing that the failure to comply was justified.
Local Rule 26.2(C).

. Although Reese was decided in May 2008, well after the 2006 conduct at issue here and the briefing in this appeal, EBG maintained throughout this appeal that Rule 26 and Local Rule 26.2(C) should be read together in the same way that Reese now reads them together.

. We note that EBG’s motion for an extension of discovery asked for an extension through December 13, 2006. EBG’s motion shows that EBG knew Fitel needed the EBG attorney depositions before producing a complete report and that December 13, 2006 was a more realistic time frame.

. Rule 37(c)(1) provides that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) ... is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed.” (Emphasis added). Similarly, Local Rule 26.2(C) provides that any party who does not comply with the provisions in the foregoing paragraph {see supra n. 16) "shall not be permitted to offer the testimony of the party’s ‘expert, unless expressly authorized by court order based upon a showing that the failure to comply was justified." (Emphasis added.)

. At no time before filing its October 23, 2006 motion to exclude expert testimony did EBG complain of or object to Fitel’s disclosed plan to submit its expert report when the EBG attorney depositions were completed and Fitel’s expert had an opportunity to take into account the testimony of the EBG fact witnesses about whose professional conduct she was asked to opine.

. See supra n. 14. The hearing on EBG’s discovery motions was not until December 15, 2006. Just as the parties cooperated in scheduling the EBG attorney depositions in June through September, they easily could have cooperated in scheduling Rafuse’s deposition in November 2006 and then the deposition of EBG’s expert.

. In Reese, by contrast, this Court rejected the plaintiff's argument that his failure to disclose his expert's opinions until seven weeks after the close of discovery — and then only in his response to the defendants’ summary judgment motion — was substantially justified because he needed the defendants’ depositions. 527 F.3d at 1265-66. Reese involved a 42 U.S.C. § 1983 excessive force claim arising from the plaintiff's arrest by the defendant police officers. Obviously, in that case the plaintiff was present for all the rele-van! events concerning the arrest and use of force. See id. at 1266 (stating Reese’s expert "could have rendered a report ... based upon factual assumptions furnished to him by Reese”). Further, Reese’s written disclosures did not identify an expert, his counsel verbally identified the expert only twelve days before discovery closed, and Reese never sent opposing counsel a written report at all (or other information from his expert) but simply filed the expert’s affidavit in opposition to the defendants’ summary judgment motion.

. The Route 1 Court noted that Rule 37 on its face does not require that a court formally issue an order compelling discovery before sanctions are authorized. 126 F.3d at 1317. However, the Court concluded that a district court may not impose sanctions pursuant to Rule 37(d) that dismiss a party's claims in "the absence of either a motion to compel filed by the [opposing party] or an order of the court compelling discovery." Id. at 1318. Here, however, EBG did move the court, alternatively to its motion for sanctions, for an order compelling Fitel to produce the records substantiating its attorney’s fees claim.

. In cases where there has been a prior order compelling discovery, this Court has stated that the ultimate sanction of dismissal with prejudice should be imposed only in cases of bad faith, willful delay, or flagrant disregard for the district court’s discovery orders. Wouters v. Martin County, Fla., 9 F.3d 924, 934 (11th Cir.1993); Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1556 (11th Cir.1986); McKelvey v. AT&T Techs., Inc., 789 F.2d 1518, 1520 (11th Cir.1986). "The trial court’s discretion regarding discovery sanctions is not unbridled. We have consistently held that while district courts have broad powers under the rules to impose sanctions ..., dismissal is justified only in extreme circumstances and as a last resort.” Wouters, 9 F.3d at 933 (citations omitted). In Route 1, where there was no prior discovery order, we recognized the need for a showing of bad faith or willful delay to support the sanction of dismissal. See Route 1, 126 F.3d at 1317— 18. If bad faith or willful delay is required to support dismissal where there was a prior discovery order, it is certainly required where there is only a motion to compel, as in this case.

. Rule 37(d) provides that a district court may sanction a party who fails, among other things, "to serve answers or objections to interrogatories submitted under Rule 33” or “to serve a written response to a request for inspection submitted under Rule 34.” Although Fitel served a response to the Document Request, that is not enough to insulate it from a Rule 37(d) sanction under these facts. See In re Plywood Antitrust Litig., 655 F.2d 627, 638 (5th Cir. Unit A Sept. 1981) (affirming a district court’s imposition of Rule 37(d) sanctions for failure to respond to interrogatories and stating that "under appropriate circumstances, evasive and incomplete answers ... are tantamount to no answers at all” (citations omitted)); Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir.1981) lew banc) (accepting as binding precedent all Fifth Circuit cases decided before October 1, 1981). This is particularly true where the response said Fitel would produce the documents and Fitel then produced nothing at all. We recognize Fitel later stated it was willing to produce a summary of the fees and expenses if EBG would agree that Fitel’s summary resolved the discovery dispute. However, this misses the point that Fitel had an obligation to produce something and could not simply say it would produce nothing unless EBG agreed in advance to the adequacy of its summary that EBG had not even seen. Fitel, at a minimum, readily could have produced its fee agreement and revealed the amount of the fees charged to date.