# United States Court of Appeals

## For the First Circuit

No. 05-1499

EUGENE SCANLON, BIG VEE BOATS INC., DENNIS A. SOKOL,
and INDEMNITY INSURANCE COMPANY OF NORTH AMERICA,

Plaintiffs, Appellants,

v.

M.V. SUPER SERVANT 3, Her Engines, Tackle, Apparel,
Appurtenances, etc., in rem; and DOCKWISE SHIPPING B.V.,
DOCKWISE B.V., AND DOCKWISE N.V., in personam,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary M. Lisi, U.S. District Judge]

Before

Torruella, Circuit Judge,
Campbell, Senior Circuit Judge,
and Howard, Circuit Judge.

Anthony J. Pruzinsky, with whom Hill Rivkins & Hayden LLP,
Norman A. Peloquin, and Law Office of Norman A. Peloquin, II, P.C.,
were on brief, for appellants.
Jeremy J.O. Harwood, with whom Healy & Baillie, LLP, was on
brief, for appellees.

November 8, 2005

**TORRUELLA**, <u>Circuit Judge</u>. Plaintiffs herein appeal from the district court's order compelling arbitration of their maritime dispute, with the court first staying and then dismissing the case. We conclude that we lack appellate jurisdiction and therefore dismiss this appeal.

## I.

In July 2002, during a voyage from Palma de Mallorca, Spain to Newport, Rhode Island, two sailing yachts, the EIVISSA and the CRASAVITSIA, were damaged while onboard the transportation vessel M.V. SUPER SERVANT 3. The damage was apparently sustained when the crew of the SUPER SERVANT were spray painting a portion of their own ship, near to where the two sailing vessels were stowed. Apparently some overspray occurred, causing damage to both vessels.

Yacht owners Eugene Scanlon and Dennis Sokol and their insurer Indemnity Insurance Company of North America ("plaintiffs") brought an action alleging breach of contract and tort against the SUPER SERVANT, Dockwise Shipping B.V., Dockwise B.V., and Dockwise N.V. ("Dockwise," or "defendants") in the United States District Court for the District of Rhode Island on June 20, 2003. Dockwise in turn sought to compel arbitration pursuant to 9 U.S.C. § 4 on the basis of an arbitration clause contained within the written contracts of carriage, or "booking notes," into which plaintiff yacht owners and Dockwise had entered prior to undertaking the voyage. The parties agreed that the arbitration clause at issue

fell within the scope of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention"), as implemented by 9 U.S.C. § 201, et seq. Plaintiffs contended, however, that an exculpatory clause[1] contained within the booking notes releasing Dockwise from all liability was contrary to U.S. law and policy and would be implemented under Dutch law,[2] thus

---

[1] Clause 7 of the booking note provided in relevant part:

> (3) The Yacht Owner shall be liable for
> (a) any loss or damage or delay, howsoever caused and of whatever nature, to or sustained by the Yacht (including damage to the Yacht's interior), and including any property on board the Vessel which is operated, owned, hired or leased by the Yacht Owner, its employees, servants, agents or subcontractors, regardless of whether such property is to be shipped or not;
> . . .
> (d) any loss, costs and damages consequent upon loss, damage or delay (including delay resulting from delayed shipment) to the Yacht; all of which shall be for the account of the Yacht Owner, without recourse to the Carrier, its servants or agents or insurers.
>
> The Yacht Owner shall defend, indemnify and hold harmless the Carrier from and against any and all claims, losses, costs, damages and expenses of every kind and nature arising from the foregoing.

[2] Clause 6 of the booking note provided:

> (1) Disputes arising from this Agreement which cannot be settled amicably, will be referred exclusively to arbitration in Rotterdam, The Netherlands.
>
> (2) Arbitration in Rotterdam will be conducted in accordance with the Rules of the Transport and Maritime Arbitration Association (TAMARA). Insofar as anything has not been dealt with by the terms and conditions of this Agreement, the law of the Netherlands shall apply . . . .

rendering the arbitration agreement unenforceable under the narrow exception set forth in Art. II., § 3 of the Convention.[3]

On February 25, 2004, the district court entered an order to compel arbitration and stay the action in its entirety during the pendency of arbitration. The district court found that the exculpatory clause did not place the arbitration agreement within the Convention's narrow § 3 exception as it has been construed in this circuit and advised plaintiffs that their argument was "premature" and would be "more properly presented if, and when, the arbitrator applies [the exculpatory clause] and judicial enforcement of the arbitration award is sought."

More than four months later, on July 1, 2004, plaintiffs moved to amend the order of February 25 so as to certify an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). At the time of that filing, plaintiffs acknowledged that in reliance upon the advice of their Dutch law expert, they had not commenced arbitration proceedings in the Netherlands as required by the

_____

[3] Under the Convention:

   (3) The court of a Contracting State, when seized of an action in a matter in respect to which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed.

Convention on the Recognition and Enforcement of Foreign Arbitral Awards, Art. II, § 3, as implemented by 9 U.S.C. § 201.

-4-

booking note and the order of the district court. Their expert had apparently warned that the arbitrator would apply Dutch law and that the exculpatory clause would be enforced under Dutch law. Plaintiffs sought to appeal in part because their claims were now time-barred under the applicable arbitration provisions. The district court denied the motion as untimely.

Thereafter on August 17, 2004, plaintiffs requested "reconsideration and clarification" of the denial of interlocutory appeal pursuant to Fed. R. Civ. P. 60(b)(6), and were again denied. In that motion, plaintiffs provided no new information with which the court might reconsider its previous denial of § 1292 relief but added a completely new request for a lift of the stay of proceedings and dismissal in favor of defendant.

On February 11, 2005, the district court requested a status report on this case, and, on March 15, plaintiffs moved for dismissal in favor of defendants. The district court granted the motion for dismissal on the following day. This appeal followed.

**II.**

The threshold question in this case is whether this court has jurisdiction to hear an appeal brought by a party which has consented to the very judgment from which it then appeals. Several circuits refuse appellate jurisdiction in such cases. See, e.g., Tel-Phonic Servs., Inc. v. TBS Int'l, Inc., 975 F.2d 1134, 1137 (5th Cir. 1992) ("A party will not be heard to appeal the propriety

of an order to which it agreed."); <u>Stewart</u> v. <u>Lincoln-Douglas Hotel Corp.</u>, 208 F.2d 379, 381 (7th Cir. 1953) ("It is a generally accepted rule of long standing that a party who agrees or consents to the entry of an order or judgment thereby waives his right to claim that the trial court committed error in the entry of the order."); <u>Marks</u> v. <u>Feist</u>, 8 F.2d 460, 462 (2d Cir. 1925) ("So far as this record shows, the complaint was dismissed on the plaintiff's motion, and the decree entered was in effect a decree by consent.  And from such a decree the plaintiff cannot appeal.").

Although this circuit generally holds a party who consents to a judgment to have waived the right of appeal, we have allowed a limited exception: "'it is possible for a party to consent to a judgment and still preserve [its] right to appeal' a previous ruling on a contested matter in the case, as long as it 'reserve[s] that right unequivocally." <u>BIW Deceived</u> v. <u>Local S6, Industrial Union of Marine and Shipbuilding Workers of America, IAMAW District Lodge 4</u>, 132 F.3d 824, 828 (1st Cir. 1997) (quoting <u>Coughlin</u> v. <u>Regan</u>, 768 F.2d 468, 469-70 (1st Cir. 1985)).

In <u>BIW Deceived</u>, we held that plaintiff-appellants had preserved their right to appeal despite having successfully sought dismissal below because the record clearly reflected "the plaintiffs' unequivocal intention" to seek review.  <u>Id.</u>  In order to apply the "unequivocal intention" standard in this case, it is helpful to revisit <u>BIW Deceived</u> in some detail.  In that case, the

Bath Iron Works Union ("BIW") had hired several electricians and pipefitters, allegedly under false pretenses. When they were laid off, the former employees brought suit in Maine state court, and defendant BIW removed to federal court. When plaintiffs' motion for remand was denied, they made three separate submissions to the court regarding their intentions to appeal. First, they moved for entry of "a final and appealable judgment" in favor of defendants, but were denied. Id. In the status conference which followed, "plaintiffs represented . . . that they desired the entry of final judgment in order to 'appeal the [district court's] preemption ruling.'" Id. Finally, upon renewed motion for dismissal, plaintiffs "solicited the entry of a 'final judgment, without prejudice to the plaintiff's right to seek appeal.'" Id. On appeal, we were convinced that the record "clearly show[ed] the plaintiffs' unequivocal intention." Id. Such is not the present case.

In the case before us, plaintiffs failed "unequivocally" to reserve their right to appeal within the meaning of the standard established in BIW Deceived, and thus we are compelled to conclude that they have forfeited that right. Although plaintiffs maintain that they have made a "concerted, consistent, and ultimately effective effort" to reserve their right to appeal throughout this case, the record does not support their assessment. In their March 15, 2005 motion, plaintiffs sought dismissal in favor of

-7-

defendants "in the interest of finality," making no mention of their intent to appeal. Not only did they fail specifically to solicit a dismissal in the unequivocal language of BIW Deceived ("without prejudice to the plaintiff's right to seek appeal"), but their employment of the word "finality" verged on the disingenuous if in fact they sought dismissal solely for the purpose of mounting an appeal, which they now claim to have done. It is insufficient that plaintiffs at one point in the course of the proceedings expressed a desire to appeal. The declaration of intent to appeal must be made concurrently with the motion for dismissal. It is at this point that they were required unequivocally to reserve their right to appeal.

Plaintiffs contend that their motion for dismissal did not expressly state their intention to seek review because defendants "would have objected" if that purpose had been made plain. This is almost certainly the case, as plaintiffs' wish to seek relief in the U.S. courts rather than in an arbitral court in the Netherlands was precisely the subject of the action below. Such an argument merely emphasizes plaintiffs' inappropriate tactics. The decision on the motion was for the district court to make.

Plaintiffs dismiss the unequivocal intention standard as simply a matter of "magic words" and evidence of defendants' "efforts to elevate form over substance." And although it is

without doubt that courts do, on occasion, favor bright-line rules at the expense of equitable results, we are confident that this is not such an instance. The general principle that a party cannot appeal from a judgment to which he has consented finds roots in some of the fundamental public policy priorities of the federal judiciary: conserving judicial resources and avoiding delay.

Plaintiffs improperly rely on this court's determination that "the proper way to appeal an interlocutory order is to move for a voluntary dismissal with prejudice." John's Insulation, Inc. v. L. Addison and Associates, Inc., 156 F.3d 101, 107 (1st Cir. 1998). Plaintiffs misapply John's Insulation when they gloss over the additional requirements it imposes: namely, that such dismissal must be sought without delay, and that the intent to appeal must be made explicit.

> [P]laintiffs may sometimes find that an interlocutory ruling has so damaged their case that seeing it to trial would be a waste of resources. However, in such situations, the proper course of action is not to delay the proceedings, but to file a motion for voluntary dismissal with prejudice, stating explicitly that the purpose is to seek immediate review of the interlocutory order in question. Such a voluntary dismissal has the virtues of giving the defendants and the district court notice of the plaintiff's intentions, and of preventing excessive delay.

Id. (emphasis added).

Plaintiffs' intent to appeal was not made explicit in their motion for dismissal. Plaintiffs expressed a desire to have

the case dismissed as early as August 17, 2004, but they did so ineptly, tacking the submission on to the end of a "motion for reconsideration" (when dismissal had not been under consideration in the previous order) rather than submitting a proper motion to dismiss. Their March 15, 2005 motion explicitly requested a lift of the stay of proceedings and entry of a judgment of dismissal "in the interest of finality" and made no mention of their intent to seek review, immediate or otherwise.

Rather than filing immediately for voluntary dismissal with prejudice as directed by John's Insulation, plaintiffs filed a dilatory motion for interlocutory appeal under 28 U.S.C. § 1292 (b), which the district court denied as untimely. Although plaintiffs in this case did ultimately file a motion for voluntary dismissal with prejudice, they did not do so until March 15, 2005 -- more than one year after the original order to compel arbitration and stay proceedings. It was not until the district court requested a status report in February 2005 that plaintiffs managed to effectively request -- and obtain -- dismissal of this action, but they failed explicitly to reserve their right to appeal.

## III.

For the foregoing reasons, we find that this court is without appellate jurisdiction to review the merits of this case.

**Dismissed**.

-10-