[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-10474
_____

D.C. Docket No. 2:09-cv-01812-VEH

MYRA CORLEY,
CHARLES CORLEY,

Plaintiffs-Appellants,

versus

LONG-LEWIS, INC., individually and as successor to Burrell Corp., f.k.a. Lewis
Hardware Co.; BIRMINGHAM RUBBER AND GASKET CO., et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(July 16, 2020)

Before WILLIAM PRYOR, Chief Judge, JILL PRYOR and LUCK, Circuit
Judges.

WILLIAM PRYOR, Chief Judge:

This appeal requires us to resolve three difficult questions of appellate

jurisdiction before deciding a single issue on the merits. The jurisdictional issues

are (1) whether an order granting a voluntary dismissal without prejudice, Fed. R.

Civ. P. 41(a)(2), is a "final decision[]," 28 U.S.C. § 1291; (2) whether we have territorial jurisdiction, *id.* § 1294, to review an interlocutory decision by an out-of-circuit district court that merged into the final judgment of a district court in this Circuit; and (3) whether an appellant has standing to appeal from a final judgment accompanying an order granting his motion for a voluntary dismissal. Charles Corley and his wife, Myra Corley, filed this lawsuit against dozens of companies that allegedly supplied products containing asbestos that caused Charles's malignant mesothelioma. Although the Corleys commenced their suit in an Alabama court, the companies removed it to the Northern District of Alabama. The Judicial Panel on Multidistrict Litigation then transferred the suit to the Eastern District of Pennsylvania, which eventually returned it to the Northern District of Alabama. After the Northern District of Alabama granted the Corleys' motion to voluntarily dismiss the last two companies in the suit, the Corleys sought our review of an order entered by the Eastern District of Pennsylvania that denied their motion to reconsider a partial summary judgment in favor of several companies. In that motion, the Corleys had argued for the first time that the district court should apply maritime law, not state law, to determine the merits of their claims. We conclude that the order granting a voluntary dismissal without prejudice is a final order, that we have territorial jurisdiction to hear this appeal, and that the Corleys have standing to appeal. We also affirm the judgment against the Corleys.

2

## I. BACKGROUND

Charles and Myra Corley sued dozens of companies that allegedly supplied asbestos-laden products that Charles used when he served in the United States Navy and later when he was a self-employed mechanic and repairman. The Corleys alleged that these products caused Charles's malignant mesothelioma and sought damages under state law. After Charles's death, his son, Oscar Corley, joined the suit as the executor of Charles's estate. Oscar and Myra amended their complaint to add a claim under the Alabama Wrongful Death Act. The Corleys originally filed their complaint in an Alabama court, and the companies removed the suit to the Northern District of Alabama.

The Judicial Panel on Multidistrict Litigation transferred this action to the Eastern District of Pennsylvania, where several of the companies filed motions for summary judgment. As relevant to this appeal, the Pennsylvania district court granted summary judgment in favor of 17 companies that supplied products that Charles used when he was in the Navy—a group we will call the "Navy suppliers." The district court determined that the statute of limitations had expired on the claims against these companies. The Corleys filed a motion to reconsider, which asked for "leave to elect the application of maritime law and, in so doing, the [extended] statute of limitations recognized under maritime law." After explaining that the Corleys had not previously argued that maritime law applied, the district

3

court denied the motion on the ground that a motion for reconsideration was far too late in the litigation for the Corleys to change their theory of liability.

Over the next year, the Pennsylvania district court whittled the suit down to what it thought were the final two companies in the suit—Honeywell International, Inc., and Ford Motor Company. The Judicial Panel on Multidistrict Litigation then remanded the suit to the Northern District of Alabama. The Alabama district court later dismissed Honeywell and Ford from the suit with prejudice.

The Corleys filed an appeal to this Court that challenged the Pennsylvania order denying their motion to reconsider the summary judgment in favor of the Navy suppliers. Two defendants, Fairbanks Morse Pump Corporation and Garlock Sealing Technologies, LLC, filed suggestions of bankruptcy in this Court. After investigation, we discovered that the Corley's claims against Fairbanks and Garlock were still pending in the district court and dismissed the Corleys' appeal.

On remand to the district court, the Corleys reported that Fairbanks and Garlock had filed petitions for relief in a bankruptcy court in 2010, which had stayed proceedings against them in this suit. Three months later, the bankruptcy court confirmed a reorganization plan that prevented the Corleys from litigating their claims against Fairbanks and Garlock in this suit. Because their claims against the two companies had "already been eliminated as a matter of law" in the bankruptcy court, the Corleys asked the district court to voluntarily dismiss those

4

claims without prejudice. *See* Fed. R. Civ. P. 41(a)(2) (permitting the dismissal of "an action . . . at the plaintiff's request . . . by court order, on terms that the court considers proper"); *see also Plains Growers, Inc. ex rel. Florists' Mut. Ins. Co. v. Ickes-Braun Glasshouses, Inc.*, 474 F.2d 250, 253 (5th Cir. 1973) (holding that plaintiffs can voluntarily dismiss individual parties from a suit). The district court granted their motion and entered what it called a "final judgment with respect to all claims asserted in this action." The Corleys then filed this appeal, which again challenges the denial of their motion to reconsider the summary judgment in favor of the Navy suppliers.

## II. JURISDICTION

We have a threshold obligation to ensure that we have jurisdiction to hear an appeal, for "[w]ithout jurisdiction [we] cannot proceed at all in any cause." *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1869); *accord Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). Because we are a court of limited jurisdiction, adjudicating an appeal without jurisdiction would "offend[] fundamental principles of separation of powers." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). In practical terms, our jurisdiction "must be both (1) authorized by statute and (2) within constitutional limits." *OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*, 549 F.3d 1344, 1355 (11th Cir. 2008).

5

To say that the odd procedural history of this appeal tests the boundaries of our jurisdiction would be an understatement. The Corleys challenge an interlocutory order from a district court in another circuit, and they do so by appealing from an order granting their motion for a voluntary dismissal without prejudice. But even so, we conclude that we have jurisdiction to address the merits.

We divide our discussion of the jurisdictional issues into three parts. First, we address whether an order granting a motion to voluntarily dismiss an action without prejudice is a "final decision[]." 28 U.S.C. § 1291. Second, we consider whether we have territorial jurisdiction to hear an appeal challenging an interlocutory order issued by a district court outside this Circuit that merged into the final judgment of a district court in this Circuit. *See id*. § 1294. Finally, we examine whether the Corleys have standing to appeal from an order that granted their motion for a voluntary dismissal. *See* U.S. Const. art. III, § 2.

## A.  *The Corleys Appealed a Final Decision.*

The Corleys invoke our subject-matter jurisdiction over "appeals from all final decisions of the district courts of the United States." 28 U.S.C. § 1291. Because the district court entered an order granting the Corleys' motion to voluntarily dismiss their only remaining claims, *see* Fed. R. Civ. P. 41(a)(2), the Corleys contend that we can hear their appeal. The Navy suppliers respond that we still lack jurisdiction. They argue that an order granting a plaintiff's motion to

6

voluntarily dismiss an action without prejudice under Rule 41(a)(2) is not a final decision under section 1291.

Under section 1291, "[a] 'final decision' is one by which a district court disassociates itself from a case." *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 408 (2015) (internal quotation marks omitted); *see also id.* at 409 ("[T]he statute's core application is to rulings that terminate an action."). The voluntary dismissal underlying this appeal arguably fits that definition. It ended the involvement of the district court, and the Corleys have conceded that the bankruptcy court "eliminated" their claims against Fairbanks and Garlock "as a matter of law." "That the dismissal was without prejudice to filing another suit does not make the cause unappealable, for denial of relief and dismissal of the case ended this suit so far as the District Court was concerned." *United States v. Wallace & Tiernan Co.*, 336 U.S. 793, 794 n.1 (1949).

But we do not write on a blank slate. Indeed, "the canvas looks like one that Jackson Pollock got to first." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). Our precedent splinters in multiple directions on whether voluntary dismissals without prejudice are final. *Compare, e.g.*, *McGregor v. Bd. of Comm'rs*, 956 F.2d 1017, 1020 (11th Cir. 1992) ("An order granting a plaintiff's motion for voluntary dismissal pursuant to Rule 41(a)(2) qualifies as a final judgment for purposes of appeal." (internal quotation marks omitted)), *with, e.g.*, *State Treasurer v. Barry*,

168 F.3d 8, 13 (11th Cir. 1999) ("[V]oluntary dismissals, granted without prejudice, are not final decisions themselves . . . ."), *with, e.g.*, *CSX Transp., Inc. v. City of Garden City*, 235 F.3d 1325, 1328–29 (11th Cir. 2000) (holding that a voluntary dismissal without prejudice was final when "there was no attempt to manufacture jurisdiction").

Our divergent decisions can be traced to two opinions of the former Fifth Circuit: *LeCompte v. Mr. Chip, Inc.*, 528 F.2d 601 (5th Cir. 1976), and *Ryan v. Occidental Petroleum Corp.*, 577 F.2d 298 (5th Cir. 1978). To "determine which of our precedents binds us," *CSX Transp., Inc. v. Gen. Mills, Inc.*, 846 F.3d 1333, 1337 (11th Cir. 2017), we must begin with them.

*LeCompte* involved a plaintiff's appeal from an order granting his motion under Rule 41(a)(2) to dismiss his complaint without prejudice subject to certain conditions. 528 F.2d at 602. Before reaching the merits, our predecessor court considered whether the order was appealable. *Id.* It devoted most of its attention to whether the plaintiff had standing to challenge the stringent conditions on refiling that the district court attached to its dismissal order. *See id.* at 603–04. But before it reached that issue, *LeCompte* addressed whether the order was final, *see id.* at 603, which was also necessary to its holding that the order was appealable, *see* 28 U.S.C. § 1291. It concluded that "[w]here the trial court allows the plaintiff to dismiss his action without prejudice, the judgment, of course, qualifies as a final

8

judgment for purposes of appeal." *LeCompte*, 528 F.2d at 603 (internal quotation marks omitted). After concluding that the voluntary dismissal order was final and that the plaintiff was adverse to that order, *LeCompte* vacated and remanded the order on the merits. *Id.* at 603–05.

*Ryan v. Occidental Petroleum Corp.*, 577 F.2d 298, came two years later. After the district court in *Ryan* had dismissed all but one of the plaintiff's claims, the plaintiff moved to voluntarily dismiss the paragraph of his complaint that contained his remaining substantive allegation. *Id.* at 300. Although the district court granted the plaintiff's narrow motion, it "did not purport to dismiss the jurisdictional allegations of [the] complaint . . . and it specifically noted that the dismissal was without prejudice to [the plaintiff's] right to file again." *Id.* When the plaintiff tried to appeal, the former Fifth Circuit held that it lacked jurisdiction. *Id.* It concluded that no final judgment existed because "the torso of the plaintiff's complaint—including the identification of the parties and the jurisdictional allegations—remain[ed] before the district court." *Id.* at 301. *Ryan* later explained that the "chief problem" with finality in the appeal was that the plaintiff's dismissal motion was "more appropriately considered to be an amendment to the complaint under Rule 15" and that an order granting leave to amend "lacks finality" when it "permits judicial proceedings to continue." *Id.* at 302 n.2. *Ryan* separately concluded that the plaintiff could not take advantage of the *Jetco* exception to

finality, which allows parties to appeal interlocutory decisions that were part of a series of orders that "effectively terminated the entire litigation." *Id.* at 301–02; *see also Jetco Elec. Indus., Inc. v. Gardiner*, 473 F.2d 1228, 1231 (5th Cir. 1973). Because the "language of the district court's order, along with its retention of the jurisdictional allegations of the complaint, appeared to contemplate that [the plaintiff] would pursue this same action in the same court," the voluntary dismissal did "not amount to a termination of the litigation between the parties." *Ryan*, 577 F.2d at 302. And because the order "neither amount[ed] to an appealable final decision nor [met] the requirements of any exception to the finality rule," *Ryan* dismissed the appeal. *Id.* at 303.

LeCompte and *Ryan* are not in conflict. We can read *LeCompte* to establish that a voluntary dismissal under Rule 41(a)(2) is a final decision for the purposes of appeal at least when the court places stringent conditions on refiling. *See* 528 F.2d at 603. *Ryan* qualifies that voluntary dismissals are deprived of finality when part of the complaint remains before the district court, which occurs when a plaintiff moves to voluntarily dismiss only part of his remaining complaint without prejudice, the district court grants the motion without purporting to dismiss the remainder of the complaint, and the dismissal order contemplates future filings in the court. *See* 577 F.2d at 300–02 & n.2. Under these circumstances, the dismissal

10

is akin to an order granting leave to amend, which is not final when it "permits judicial proceedings to continue." *See id.* at 302 n.2.

Perhaps because no conflict existed, both the former Fifth Circuit and, at least initially, this Court held that voluntary dismissals without prejudice were final in a variety of circumstances. Shortly after *Ryan*, our predecessor court explained that *LeCompte* "stated the usual rule governing the appealability of orders granting motions for voluntary dismissal" and reiterated that voluntary dismissals under Rule 41(a)(2) are final decisions. *Yoffe v. Keller Indus., Inc.*, 580 F.2d 126, 129 (5th Cir. 1978). This Circuit initially allowed appeals from voluntary dismissals without prejudice without addressing whether a voluntary dismissal was final. *See, e.g.*, *Black v. Broward Emp't & Training Admin.*, 846 F.2d 1311, 1312 & n.3 (11th Cir. 1988); *Studstill v. Borg Warner Leasing*, 806 F.2d 1005, 1007 (11th Cir. 1986); *McCants v. Ford Motor Co., Inc.*, 781 F.2d 855, 856 (11th Cir. 1986). But we later cited *LeCompte* and held that an "order granting voluntary dismissal without prejudice under Rule 41(a)(2) is final and appealable" by a defendant who had opposed the plaintiff's motion for voluntary dismissal. *Kirkland v. Nat'l Mortg. Network, Inc.*, 884 F.2d 1367, 1369–70 (11th Cir. 1989). Because the voluntary dismissal was a final judgment, we explained, "it incorporate[d] and [brought] up for review the preceding nonfinal order" that the defendant challenged. *Id.* at 1370. Finally, in *McGregor v. Board of Commissioners*, which

11

involved a plaintiff's challenge to several claims that the district court had dismissed on the merits before granting the plaintiff's motion to dismiss his remaining claims, we quoted *LeCompte* and *Yoffe* and held that "[a]n order granting a plaintiff's motion for voluntary dismissal pursuant to Rule 41(a)(2) qualifies as a final judgment for purposes of appeal." 956 F.2d at 1020 (internal quotation marks omitted).

The conflict came in *Mesa v. United States*, which also involved an order granting a motion to voluntarily dismiss a suit without prejudice. *See* 61 F.3d 20, 21 (11th Cir. 1995). *Mesa* held that the order of dismissal before it was not final. *See id.* It interpreted *Ryan* to hold that "the voluntary dismissal of [a] plaintiff's remaining claim could not be considered final because a voluntary dismissal is without prejudice to the moving party to file those claims again." *Id.* at 22. This understanding of finality became the standard in this Circuit for addressing voluntary dismissals without prejudice. *See State Treasurer*, 168 F.3d at 13; *Constr. Aggregates, Ltd. v. Forest Commodities Corp.*, 147 F.3d 1334, 1335–37 (11th Cir. 1998) (extending *Mesa* to stipulated dismissals under Rule 41(a)(1)).

We first spotted the tension in our precedent in *State Treasurer v. Barry*, 168 F.3d 8. After the district court in *State Treasurer* granted a partial summary judgment in favor of the defendants, the parties filed a joint stipulation to dismiss the remaining claim in the suit. *Id.* at 9–10; *see also* Fed. R. Civ. P. 41(a)(1)(A)(ii)

12

(allowing the plaintiff to dismiss an action without a court order if all parties sign a stipulation of dismissal). We dismissed the plaintiff's appeal because we concluded that *Mesa* and its reading of *Ryan* controlled. *See State Treasurer*, 168 F.3d at 16. Although we failed to mention *McGregor*, we acknowledged that *LeCompte* and *Kirkland* had allowed appeals from voluntary dismissals without prejudice. *Id.* at 14. But we concluded that the reasoning of these two decisions did not extend to stipulated dismissals. *Id.* at 15. *LeCompte* and *Kirkland*, we explained, involved court orders of dismissal under Rule 41(a)(2), not stipulated dismissals under Rule 41(a)(1). *Id.*; *see also Kirkland*, 884 F.2d at 1369–70 (concluding that a voluntary dismissal without prejudice "under Rule 41(a)(2) is final"); *LeCompte*, 528 F.2d at 603 (concluding that a voluntary dismissal without prejudice is final "[w]here *the trial court allows* the plaintiff to dismiss his action without prejudice" (emphasis added) (internal quotation marks omitted)). We added, in dicta, that *LeCompte* "is limited to a subset of Rule 41(a)(2) dismissals": dismissals in which the court "placed stringent conditions on the plaintiff's ability to re-file its dismissed claims." *State Treasurer*, 168 F.3d at 15.

This appeal picks up where *State Treasurer* left off. To be sure, we have revisited whether stipulated or noticed dismissals under Rule 41(a)(1) are final. *See, e.g.*, *Equity Inv. Partners, LP v. Lenz*, 594 F.3d 1338, 1341–42 n.2 (11th Cir. 2010); *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1265–66 (11th Cir. 1999); *Univ. of S.*

13

*Ala.*, 168 F.3d at 408 n.1. But we have not addressed the tension between our earliest precedents and *Mesa* as applied to voluntary dismissals under Rule 41(a)(2). *Cf. Hood v. Plantation Gen. Med. Ctr., Ltd.*, 251 F.3d 932, 933–34 (11th Cir. 2001) (holding that an order granting a motion for voluntary dismissal was not final when a claim remained pending in the district court and that voluntarily dismissing the remaining claim did not trigger the *Jetco* exception). That tension is squarely presented in this appeal.

Two principles govern our approach to resolving conflicts in our precedent. First, we are "obligated, if at all possible, to distill from apparently conflicting prior panel decisions a basis of reconciliation and to apply that reconciled rule." *United States v. Hogan*, 986 F.2d 1364, 1369 (11th Cir. 1993). And second, if we cannot reconcile our precedent, we must follow the oldest decision that governs the issue. *See Gen. Mills*, 846 F.3d at 1338; *accord* Bryan A. Garner et al., *The Law of Judicial Precedent* § 36, at 303–04 (2016).

We see no way to give force to *Mesa* in the light of our earlier precedents. Even if *State Treasurer* is correct that we can limit *LeCompte* to situations in which the district court attached "stringent conditions" to the voluntary-dismissal order, 168 F.3d at 15, we must still reconcile *Mesa* with our other earlier decisions, at least one of which is materially identical to it. In both *McGregor* and *Mesa*, the plaintiff suffered an adverse decision on some of his claims and voluntarily

14

dismissed his remaining claims without prejudice to challenge the earlier decision on appeal. *See Mesa*, 61 F.3d at 21; *McGregor*, 956 F.2d at 1018–20. *McGregor* concluded that "an order granting a plaintiff's motion for voluntary dismissal pursuant to Rule 41(a)(2) 'qualifies as a final judgment for purposes of appeal.'" 956 F.2d at 1020 (quoting *Yoffe*, 580 F.2d at 129, and *LeCompte*, 528 F.2d at 603). Conversely, *Mesa* later concluded that these orders were not final. 61 F.3d at 21–22. Because *Mesa* did not even mention *McGregor*, it provided no reason to distinguish that decision. And we cannot find one.

Because we cannot harmonize our decisions, the earliest-precedent rule applies. *See Gen. Mills*, 846 F.3d at 1340. And under that rule, we must follow *McGregor*, which both predates *Mesa* and is consistent with our earlier decisions. So we hold that an order granting a motion to voluntarily dismiss the remainder of a complaint under Rule 41(a)(2) "qualifies as a final judgment for purposes of appeal." *McGregor*, 956 F.2d at 1020 (quoting *Yoffe*, 580 F.2d at 129, and *LeCompte*, 528 F.2d at 603). And because the Corleys appealed from such an order, we have jurisdiction under section 1291.

## B. *We Have Territorial Jurisdiction to Hear This Appeal.*

The next issue concerns our territorial jurisdiction under section 1294, which mandates that "appeals from reviewable decisions of the district . . . courts shall be taken . . . to the court of appeals for the circuit embracing the district." 28 U.S.C.

15

§ 1294. The Corleys urge us to hold that "reviewable decisions" in section 1294 refers to appealable decisions—that is, decisions that federal laws grant circuit courts jurisdiction to review. Here, that decision is the voluntary-dismissal order. *See id.* § 1291. Because the Northern District of Alabama issued that order, we would have jurisdiction to review the order as "the court of appeals for the circuit embracing [that] district." *Id.* § 1294; *see also id.* § 41. The Navy suppliers counter that the reviewable decision is the order that the Corleys challenge—that is, the denial of their motion for reconsideration by the Eastern District of Pennsylvania—which would deprive us of jurisdiction. *See id.* § 41.

The parties' disagreement tracks a circuit split over the application of section 1294 to interlocutory orders that precede an inter-circuit transfer. Most circuits to reach the question have concluded that they can review an out-of-circuit interlocutory decision so long as they have jurisdiction over the district court that issued the appealable decision. *See Kalama v. Matson Navigation Co.*, 875 F.3d 297, 305 (6th Cir. 2017); *In re Briscoe*, 448 F.3d 201, 213–14 (3d Cir. 2006); *Jones v. InfoCure Corp.*, 310 F.3d 529, 532–34 (7th Cir. 2002); *Hill v. Henderson*, 195 F.3d 671, 674–75 (D.C. Cir. 1999); *Chaiken v. VV Publ'g Corp.*, 119 F.3d 1018, 1025 n.2 (2d Cir. 1997); *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1138 (5th Cir. 1992). Conversely, the Tenth Circuit has held that it lacks jurisdiction to review interlocutory orders issued by an out-of-circuit district court,

16

even when the appealable decision comes from within its boundaries. *See*

*McGeorge v. Cont'l Airlines, Inc.*, 871 F.2d 952, 954 (10th Cir. 1989). In its view,

jurisdiction under section 1294 depends on whether the district court that issued

the interlocutory order under review lies within its territorial boundaries. *See id.*

We agree with the majority interpretation and hold that the phrase

"reviewable decisions" in section 1294 refers to appealable decisions. Congress

has not given us the power to review interlocutory orders at will. Outside of narrow

circumstances not relevant here, we can review those orders only when they

"merge into a final judgment of the district court." *Akin v. PAFEC Ltd.*, 991 F.2d

1550, 1563 (11th Cir. 1993). So even when we consider the merits of an

interlocutory order, we still "review" the final decision into which the earlier order

merged. *See Kalama*, 875 F.3d at 305 ("A partial dismissal is not 'reviewable'

until it can be appealed—generally, when it 'merges' into a final, appealable

judgment."). That final decision is necessarily the reviewable decision.

The rest of section 1294 dispels any lingering ambiguity about the meaning

of "reviewable decision." *See Reno v. Koray*, 515 U.S. 50, 56 (1995) ("[I]t is a

fundamental principle of statutory construction . . . that the meaning of a word

cannot be determined in isolation, but must be drawn from the context in which it

is used." (internal quotation marks omitted)). Section 1294 concerns "*appeals from*

reviewable decisions." 28 U.S.C. § 1294 (emphasis added). This language, of

17

course, presumes that the "reviewable decision[]" is an appealable decision. After all, there can be no "appeal[] from" a non-appealable decision. *Cf. Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1413 n.4 (11th Cir. 1994) ("When reviewing an appeal from a final judgment, this court can review rulings on previous interlocutory orders." (alteration adopted) (internal quotation marks omitted)). *See generally* 28 U.S.C. § 1291 (giving courts of appeals jurisdiction over "appeals from all final decisions" of district courts). Adopting the minority interpretation would require us to ignore this context, which we cannot do.

The Navy suppliers argue that our decision in *Roofing and Sheet Metal Services, Inc. v. La Quinta Motor Inns, Inc.*, 689 F.2d 982, 986 (11th Cir. 1982), requires a different interpretation of section 1294. In *Roofing*, the Western District of Arkansas transferred the underlying suit to the Southern District of Alabama, and the appellant sought to challenge that transfer order on appeal to this Court. *See id*. at 984–85. We held that section 1294 prevented us from reviewing the transfer order. *Id.* at 986–87; *see also Murray v. Scott*, 253 F.3d 1308, 1314 (11th Cir. 2001) (holding the same); *cf. In re Corrugated Container Anti-Trust Litig.*, 620 F.2d 1086, 1090–91 (5th Cir. 1980) (holding that section 1294 required dismissing an appeal from a final order of contempt issued by the Southern District of New York against a third-party witness). The Navy suppliers argue that *Roofing* demands that we dismiss the Corleys' appeal.

18

We disagree. The holding of *Roofing* does not extend beyond transfer orders. *Roofing* reached its decision in the shadow of what it called the "well established" rule that "a transferee court cannot directly review the transfer order itself." 689 F.2d at 986 (quoting *Starnes v. McGuire*, 512 F.2d 918, 924 (D.C. Cir. 1974) (en banc)); *see also id*. at 987 ("[W]e know of no case in which [any] circuit . . . has in fact reviewed a transfer order issued by a district court in another circuit."). When *Roofing* held that it could not review the transfer order before it, it joined the uniform consensus of our sister circuits that an out-of-circuit transfer order is not reviewable on appeal in the transferee circuit. *See Posnanski v. Gibney*, 421 F.3d 977, 980 (9th Cir. 2005); *United States v. Copley*, 25 F.3d 660, 662 (8th Cir. 1994); *Lewelling v. Farmers Ins. of Columbus, Inc.*, 879 F.2d 212, 218 (6th Cir. 1989); *McGeorge*, 871 F.2d at 953–54; *Reyes v. Supervisor of the Drug Enf't Admin.*, 834 F.2d 1093, 1095 (1st Cir. 1987); *Linnell v. Sloan*, 636 F.2d 65, 67 (4th Cir. 1980); *Starnes*, 512 F.2d at 924; *Purex Corp. v. St. Louis Nat'l Stockyards Co.*, 374 F.2d 998, 1000 (7th Cir. 1967); *see also Songbyrd, Inc. v. Estate of Grossman*, 206 F.3d 172, 178 (2d Cir. 2000) (requiring a party to file a retransfer motion in the transferee court to appeal a transfer order). *But see Nascone v. Spudnuts, Inc.*, 735 F.2d 763, 772 n.9 (3d Cir. 1984) (suggesting in dicta that a transferee circuit could review a transfer order). This bar does not encompass other out-of-circuit interlocutory decisions. *See Hill*, 195 F.3d at 677 (concluding that

19

the "complex and somewhat conflicting pattern of reviewability" of transfer orders does not affect the reviewability of other pretransfer orders).

In sum, we have territorial jurisdiction. The term "reviewable decisions" in section 1294 refers to appealable decisions. The Northern District of Alabama issued the final, appealable decision in this suit. And, of course, we can hear appeals from that court.

## C. The Corleys Have Standing to Appeal.

The final jurisdictional issue concerns our jurisdiction under Article III of the Constitution, which limits our authority to "Cases" and "Controversies." U.S. Const. art. III, § 2. Although the parties do not dispute this issue, "[l]ongstanding principles of federal law oblige us to inquire *sua sponte* whenever a doubt arises as to the existence of federal jurisdiction." *Green v. Graham*, 906 F.3d 955, 961 (11th Cir. 2018) (internal quotation marks omitted). Because our precedent leaves doubt about whether we have Article III jurisdiction to hear the Corleys' appeal from their own voluntary dismissal, we address the issue.

"To have a case or controversy, a litigant must establish that he has standing, which must exist 'throughout all stages of litigation,'" including on appeal. *United States v. Amodeo*, 916 F.3d 967, 971 (11th Cir. 2019) (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013)). Standing is an "irreducible constitutional minimum," and a "court is powerless to continue" in its absence. *CAMP Legal Def.*

20

*Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1269 (11th Cir. 2006) (internal quotation marks omitted). To establish standing, a litigant must prove that "he has suffered a concrete and particularized injury." *Amodeo*, 916 F.3d at 971 (quoting *Hollingsworth*, 570 U.S. at 704). In the appellate context, "the primary meaning of the injury requirement is adverseness." *Id.* Specifically, the litigant "must be adverse as to the final judgment" to appeal from that judgment. *OFS Fitel*, 549 F.3d at 1356 (internal quotation marks omitted).

As a general rule, a plaintiff is not adverse to a voluntary dismissal that he requested. *See, e.g.*, *Druhan v. Am. Mut. Life*, 166 F.3d 1324, 1326 (11th Cir. 1999). This rule "can easily be understood," the former Fifth Circuit explained, because "the plaintiff has acquired that which he sought," so the order cannot be adverse. *LeCompte*, 528 F.2d at 603.

Appellate standing is murkier when a plaintiff appeals from a voluntary dismissal to challenge an adverse interlocutory order. On the one hand, we have held that plaintiffs have standing to appeal from a voluntary dismissal if the adverse interlocutory order is effectively "case-dispositive" and "the district court bases its dismissal with prejudice on the fact that its interlocutory decision disposed of the entire case." *OFS Fitel*, 549 F.3d at 1359 (order excluding expert testimony that was legally necessary to prevail). On the other hand, interlocutory orders that do not address the merits of a plaintiff's claim cannot establish

appellate standing. *See Druhan*, 166 F.3d at 1326 (order denying the plaintiff's motion to remand her suit to state court); *accord Woodard v. STP Corp.*, 170 F.3d 1043, 1044 (11th Cir. 1999). The second class of appeals lacks adverseness because there is "no contested court ruling, either interlocutory or final, as to the merits of the plaintiff's claims" and so "the dismissal on the merits derives only from the plaintiff's own written request." *OFS Fitel*, 549 F.3d at 1356.

This appeal does not fit neatly within our precedents on voluntary dismissals. Unlike the plaintiff in *OFS Fitel*, the Corleys did not voluntarily dismiss their claims to contest a "case-dispositive" order. They instead challenge a years-old order denying their motion to reconsider a summary judgment in favor of some defendants. But unlike the plaintiffs in *Druhan* and *Woodard*, the Corleys contest an order that completely resolved their claims against certain defendants on the merits and merged into the final judgment. *See Akin*, 991 F.2d at 1563 ("When a district court enters a final judgment, all prior non-final orders and rulings which produced the judgment are merged into the judgment and subject to review on appeal." (internal quotation marks omitted)). Because the Corleys never consented to that order, the final judgment contains an adverse decision on the merits that does not "derive[] only from the plaintiff's own written request." *OFS Fitel*, 549 F.3d at 1356.

22

Although our precedent on voluntary dismissals does not resolve this appeal, a broader principle of appellate standing establishes that the Corleys are adverse to the final judgment: "a party is 'aggrieved' and ordinarily can appeal a decision 'granting in part and denying in part the remedy requested.'" *Forney v. Apfel*, 524 U.S. 266, 271 (1998) (quoting *United States v. Jose*, 519 U.S. 54, 56 (1996)). Even though the Corleys are not adverse to the order of voluntary dismissal, which granted their requested remedy for Fairbanks and Garlock, they are adverse to the order that denied their motion to reconsider the summary judgment in favor of the Navy suppliers. And the latter order is just as much a part of the final judgment as the voluntary-dismissal order. So, notwithstanding their voluntary dismissal, the Corleys are adverse to part of the final judgment, which is enough to establish appellate standing. *See Aaro, Inc. v. Daewoo Int'l (Am.) Corp.*, 755 F.2d 1398, 1400–01 (11th Cir. 1985) (holding that plaintiffs who prevailed at trial on some of their claims and consented to a remittitur order could still appeal because they challenged an adverse partial summary judgment that had merged into the final judgment); *see also Forney*, 524 U.S. at 271; *OFS Fitel*, 549 F.3d at 1359 ("[W]hen the appeal is from a final judgment, the fact that the appeal substantively concerns an interlocutory ruling is no bar to jurisdiction.").

23

### III. STANDARD OF REVIEW

We review the denial of a motion for reconsideration for an abuse of discretion. *See Richardson v. Johnson*, 598 F.3d 734, 740 (11th Cir. 2010).

### IV. DISCUSSION

The merits of this appeal are straightforward. The Corleys contend that the district court abused its discretion when it denied their motion for reconsideration, which argued that they had a valid claim against the Navy suppliers under maritime law. The Corleys argue that they had a right to "make an election between civil and admiralty law," even after the district court entered a summary judgment. We disagree.

When the district court denied the Corleys' motion, it explained that the Corleys had "never argued previously that maritime law should apply." In their complaint, the Corleys instead alleged that "no claim of admiralty or maritime law is raised." They maintained this position in their response to the Navy suppliers' motion for summary judgment, which discussed only Alabama law. The Corleys waited until after the district court granted summary judgment in favor of the Navy suppliers to argue, in a motion for reconsideration, that they had a valid claim under maritime law against the Navy suppliers. The district court ruled that the Corleys could not argue that a different substantive law governed their complaint at that late stage in the litigation.

24

We have long held that district courts act well within their discretion when they refuse to consider arguments that a party made for the first time in a motion for reconsideration. *See, e.g.*, *Bost v. Fed. Express Corp.*, 372 F.3d 1233, 1242–43 (11th Cir. 2004); *Hashwani v. Barbar*, 822 F.2d 1038, 1041 (11th Cir. 1987). As we have explained, "[t]here is a significant difference between pointing out errors in a court's decision on grounds that have already been urged before the court and raising altogether new arguments on a motion to amend; if accepted, the latter essentially affords a litigant two bites at the apple." *Am. Home Assur. Co. v. Glenn Estess & Assocs., Inc*., 763 F.2d 1237, 1239 (11th Cir. 1985) (internal quotation marks omitted). This principle extends to plaintiffs' motions for reconsideration that urge district courts to apply a different law to govern their claims for relief. *See id*. (holding that the district court did not abuse its discretion when it rejected a choice-of-law argument that a party raised for the first time in a motion for reconsideration).

The Corleys contend that Federal Rule of Civil Procedure 9(h) gave them the right to invoke maritime law at any time, but they misread that rule. *See* Fed. R. Civ. P. 9(h)(1) ("If a claim for relief is within the admiralty or maritime jurisdiction and also within the court's subject-matter jurisdiction on some other ground, the pleading may designate the claim as an admiralty or maritime claim . . . ."). Rule 9(h)(1) "serves only as a device by which the pleader may claim the

25

special benefits of admiralty procedures and remedies, including a nonjury trial, when the pleadings show that both admiralty and some other basis of federal jurisdiction exist." *Romero v. Bethlehem Steel Corp.*, 515 F.2d 1249, 1252 (5th Cir. 1975). It does not determine whether maritime law governs a claim. *See Powell v. Offshore Nav., Inc.*, 644 F.2d 1063, 1065 & n.5 (5th Cir. Unit A May 1981).

The Corleys are not entitled to a second bite at the apple. They argued that Alabama law applied until the district court granted summary judgment in favor of the Navy suppliers. Their motion for reconsideration was the first time they even suggested that maritime law applied. And they do not offer a compelling explanation to justify their delay. For example, the Corleys' main argument is that the intervening decision of a district court in an unrelated suit, *Conner v. Alfa Laval, Inc.*, 799 F. Supp. 2d 455 (E.D. Pa. 2011), changed the law and allowed them to bring a maritime claim. But, of course, decisions of district courts "have no binding precedential authority beyond the case in which they are entered," *Dow Jones & Co. v. Kaye*, 256 F.3d 1251, 1258 n.10 (11th Cir. 2001); *accord* Garner et al., *The Law of Judicial Precedent* § 29, at 255, so *Conner* could not have affected their ability to bring a claim under maritime law. At bottom, the district court did not abuse its discretion when it concluded that this motion was an incorrect vehicle to change the substantive law governing the suit.

26

# V. CONCLUSION

We **AFFIRM** the judgment of the district court.

WILLIAM PRYOR, Chief Judge, joined by LUCK, Circuit Judge, concurring:

Although this Court has jurisdiction to hear the Corleys' appeal from their voluntary dismissal, I write separately both to underscore the widespread problems that Federal Rule of Civil Procedure 41(a) creates in finality doctrine and to highlight better ways for many litigants to secure appellate review of decisions that resolve only some of their claims.

Rule 41(a) is a poor mechanism to accelerate appellate review. The rule contemplates the voluntary dismissal of "an action," Fed. R. Civ. P. 41(a), which, we have explained, refers to "the whole case" instead of particular claims, *Perry v. Schumacher Grp. of La.*, 891 F.3d 954, 958 (11th Cir. 2018) (internal quotation marks omitted). *But see Plains Growers, Inc. ex rel. Florists' Mut. Ins. Co. v. Ickes-Braun Glasshouses, Inc.*, 474 F.2d 250, 253 (5th Cir. 1973) ("[W]e hold that plaintiff is entitled to a dismissal against one defendant under Rule 41(a), even though the action against another defendant would remain pending."). The rule also presumes that a plaintiff will want to refile the "action" later. *See* Fed. R. Civ. P. 41(a) (mandating that unless the notice, stipulation, or order of dismissal "states otherwise, the dismissal is without prejudice"). Perhaps unsurprisingly, litigants' attempts to hijack this rule as a means to "home-brew their own approach to obtaining appellate review" of particular claims, *First Health Grp. Corp. v. BCE Emergis Corp.*, 269 F.3d 800, 801 (7th Cir. 2001), have not always been smooth.

28

Nearly every circuit has encountered similar issues to those we considered in this appeal. We are not the first court to face an intracircuit split in our precedent. *See Robinson-Reeder v. Am. Council on Educ.*, 571 F.3d 1333, 1338–39 & n.6 (D.C. Cir. 2009) (explaining that several inter- and intra- circuit splits exist on the question); *Chappelle v. Beacon Commc'ns Corp.*, 84 F.3d 652, 654 (2d Cir. 1996) (listing intracircuit splits); *see also* Terry W. Schackmann & Barry L. Pickens, *The Finality Trap: Accidentally Losing Your Right to Appeal (Part I)*, 58 J. Mo. Bar 78, 84 (2002) (cautioning litigants that judicial decisions in this area are not "assured of adherence in the future" and are sometimes "ignore[d]"). And although the panel opinion compares this Circuit's finality doctrine on Rule 41(a) to a Jackson Pollock painting, we might have also called it an "egregious mess," *Williams v. Seidenbach*, 958 F.3d 341, 355 (5th Cir. 2020) (en banc) (Willett, J., concurring in the judgment) (internal quotation marks omitted), or lamented that "[i]t would be an understatement to say that our precedents . . . are difficult to harmonize," *West v. Macht*, 197 F.3d 1185, 1188 (7th Cir. 1999).

Nor are we the only circuit to riddle our doctrine with exceptions to the purported nonfinality of voluntary dismissals without prejudice. Many circuits, for example, assess the likelihood that the plaintiff will relitigate dismissed claims. *See, e.g.*, *Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Inv., II, LLC*, 887 F.3d 1003, 1015–16 (10th Cir. 2018). In other circuits, this plaintiff can secure

29

appellate jurisdiction by recanting before the appellate panel any intention of pursuing the voluntarily dismissed claims. *See, e.g.*, *Jewish People for the Betterment of Westhampton Beach v. Vill. of Westhampton Beach*, 778 F.3d 390, 394 (2d Cir. 2015). The plaintiff will receive a particularly good deal in the Third Circuit, which requires him to renounce pursuing the dismissed claims only in the same district court. *See Doe v. Hesketh*, 828 F.3d 159, 165 (3d Cir. 2016). The First Circuit will hear an appeal if he "unequivocally" reserved the right to appeal in the district court, *see Scanlon v. M.V. SUPER SERVANT 3*, 429 F.3d 6, 8 (1st Cir. 2005) (internal quotation marks omitted), while the Federal and Ninth Circuits will reach the merits if he persuades them that he acted in good faith and did not intend to manufacture appellate jurisdiction with the voluntary dismissal, *see Doe v. United States*, 513 F.3d 1348, 1353–54 (Fed. Cir. 2008); *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1070 (9th Cir. 2002). But the plaintiff should take the opposite approach if he finds himself in the Eighth Circuit, which has held that finality exists when the plaintiff tries to manufacture jurisdiction—that is, if the plaintiff voluntarily dismissed his claims without prejudice to "expedite appellate review" of other issues. *Helm Fin. Corp. v. MNVA R.R., Inc.*, 212 F.3d 1076, 1080 (8th Cir. 2000).

In the light of the volatility Rule 41(a) brings to appellate jurisdiction, district courts faced with voluntary-dismissal motions would act well within their

discretion to redirect litigants to other avenues to appeal. *See McCants v. Ford Motor Co., Inc.*, 781 F.2d 855, 857 (11th Cir. 1986) ("Dismissal on motion of the plaintiff pursuant to Rule 41(a)(2) is within the sound discretion of the district court, and its order may be reviewed only for an abuse of discretion."). The Federal Rules of Civil Procedure provide litigants with better options to secure an appeal.

For example, district courts can designate decisions on the merits as final under Rule 54(b). *See* Fed. R. Civ. P. 54(b) (allowing district courts to "direct entry of a final judgment as to one or more, but fewer than all, claims or parties" if they find that "there is no just reason for delay"). In this appeal, such a designation would have obviated any question about whether we could reach the merits. *See, e.g.*, *Perry*, 891 F.3d at 958 ("[I]t is likely that a plaintiff would have little trouble [satisfying Rule 54(b)] where . . . the nucleus of her multi-claim and multi-party suit has been destroyed and she is now faced with committing the time and expense of trying only one claim against only one defendant.").

Alternatively, district courts may sever a party's remaining claims. *See* Fed. R. Civ. P. 21 ("The court may . . . sever any claim against a party."). The severed claims would "proceed[] as a discrete suit and result[] in [their] own final judgment from which an appeal may be taken." *Hofmann v. De Marchena Kaluche & Asociados*, 642 F.3d 995, 998 (11th Cir. 2011). As with Rule 54(b), Rule 21 can form the basis of an appeal. *See, e.g.*, *Estate of Amergi ex rel. Amergi v.*

31

*Palestinian Auth.*, 611 F.3d 1350, 1367 (11th Cir. 2010) ("[I]t was no abuse of discretion to sever the claims so that Saperstein could proceed to trial on his FTA claim and that the Amergis could take an immediate appeal for the dismissal of their claims."). Here, the Corleys moved to sever their claims before they sought a voluntary dismissal without prejudice, but the district court denied their motion without explanation.

Still other possibilities remain open to explore. For example, a district court could grant leave to amend a complaint to drop lingering claims. *See* Fed. R. Civ. P. 15(a)(2) (empowering district courts to "freely give leave [to amend] when justice so requires"); *see also Nat'l Broiler Mktg. Ass'n v. United States*, 436 U.S. 816, 819 n.5 (1978); *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1106 (11th Cir. 2004). Or, if needed, a district court could drop parties. *See* Fed. R. Civ. P. 21 ("On motion . . . the court may at any time, on just terms, add or drop a party."); *see also Lampliter Dinner Theater, Inc. v. Liberty Mut. Ins. Co.*, 792 F.2d 1036, 1045–46 (11th Cir. 1986) (stressing the "great discretion" district courts have when using Rule 21 to drop a party).

District courts should consider the availability of these options when deciding whether to grant a voluntary dismissal without prejudice under Rule 41(a)(2). To be sure, the panel opinion paves the way for litigants to continue using Rule 41(a) to secure appellate review, but this result may not be permanent. Our

decision is largely grounded on the force of precedent, and an en banc court would have colorable arguments to reconsider our approach. *See, e.g.*, *Williams*, 958 F.3d at 362 (Oldham, J., dissenting) (arguing that litigants lack standing to appeal from a voluntary dismissal without prejudice because "a Rule 41(a) dismissal represents a voluntary abandonment of the entire action"). And in the light of the chaos both within and among the circuits, the Supreme Court might also intervene.

I express no opinion on the need for such a shift, much less on the merits of any future dispute over our appellate jurisdiction. Regardless of these issues, litigants have a number of more reliable tools to use when seeking appeals. They should look first to them before resorting to Rule 41(a).